RALPH R. BUVINGER

*v.*

EVENING UNION PRINTING COMPANY.

[Decided January 5th, 1907.]

1. A chattel mortgage may be made a lien on the outstanding book accounts due to a mortgagor, and also upon such book accounts as shall thereafter become due to the mortgagor in the regular course of his business.

2. The general manager of a corporation, who was also a stockholder and a member of the board of directors, held to be entitled to preferment under *P. L. 1896 p. 303 § 83* for two months' wages next preceding the institution of proceedings of insolvency.

On appeal from the decision of a receiver touching the allowance of claims.

*Mr. William M. Clevenger,* for the appellant.

*Messrs. Bourgeois & Sooy,* for the receiver.

LEAMING, V. C.

The first question presented is whether a certain chattel mortgage, executed by defendant corporation prior to its insolvency, is a lien on outstanding book accounts due to the corporation at the time it became insolvent and passed into the hands of a receiver.

The chattel mortgage in question was executed to the Guarantee Trust Company, February 1st, 1902, to secure an issue of coupon bonds made by mortgagor. It embodies the ordinary features of trust mortgages, and is executed in conformity to the requirements of the statutes touching chattel mortgages.

The resolution of the stockholders authorizing the mortgage

21

is recited in the instrument and refers to the chattels to be covered by the mortgage in the following language:

"That the president and secretary be and they are hereby authorized and directed to make and execute, under the corporate seal of said company, an indenture of mortgage covering all of the presses, type-setting machines, type, rules, slugs, folders, cutters, stock and all other goods and chattels and personal property of any kind or character now . or which shall hereafter be owned by the said Evening Union Printing Company, together with the 'Daily Union,' 'Atlantic Times-Democrat' and 'Star Gazette,' or any other newspapers now or hereafter to be published by the said company, all of which property now owned by said company and all of which papers now published by said company are located at 1632 Atlantic avenue, in the city of Atlantic City, in the county of Atlantic and State of New Jersey, together also with the privileges, franchises and appurtenances of and belonging to this company wheresoever situate, or that may be hereafter acquired by or conferred upon this company, including the franchise to be a corporation."

The resolution further provides:

"That for the better securing of the money due to the purchasers of the bonds secured by said mortgage, a sinking fund be created for the purchase and cancellation of the bonds to be issued by this company, and to that end the income from the business to be conducted by this company, after first paying the floating indebtedness amounting to $4,970.99, assumed by this company upon the purchase of the said property from the Daily Union Printing Company, and after paying all salaries and other expenses of any kind or character, and before paying any dividend to the holders of shares of capital stock of this company, the balance in the hands of the treasurer at the end of each fiscal year shall be credited to the sinking fund account for the purposes aforesaid."

The resolution of the board of directors, passed to carry into effect the resolution of the stockholders, is also embodied in the mortgage, and in describing the property to be covered by the mortgage follows the exact language of the stockholders' resolution.

In the granting clause of the mortgage the description of the property mortgaged specified the two newspapers referred to and their good will and the job printing business conducted in conjunction with them, and then enters upon an enumeration of various printing presses, each press being specifically described, and also a type-setting machine and certain shafting and belting

and a certain electric motor, and then proceeds with the following language:

"Together with all of the type, slugs, rules, racks, frames, quods, furniture, desks, chairs, cabinets, leads, galleys, stones, saws and all personal property of any kind or character now belonging to the said Evening Union Printing Company, or which may hereafter belong to the said Evening Union Printing Company, either by way of renewal of the goods and chattels above described, or by way of additions thereto, including the right and franchise to be a corporation, and also all of the estate, rights, titles, incomes and interest whatsoever, as well at law as in equity of the said party of the first part in and to the same."

"To have and to hold the said newspapers, goods and chattels and other personal property, as well as the corporate rights, privileges and franchises unto the said party of the second part, its successor or successors in trust," &c.

Among the stipulations contained in the mortgage is one making provision for the sinking fund as referred to in the resolutions above quoted. By this stipulation a sinking fund is created for the purchase and cancellation of the bonds after first paying the floating indebtedness referred to, "and after paying all salaries and other expenses of any kind or character."

I am of the opinion that this chattel mortgage is a lien on the outstanding book accounts due to defendant corporation at the date of its insolvency. This court has repeatedly held that a mortgagor of chattels may be permitted to transact business and make sale of the mortgaged chattels in the regular course of his business, and that in such cases the lien of the mortgage, if so stipulated, will attach to the chattels from time to time acquired to supply the place of the chattels sold. With these rights of a mortgagor and mortgagee recognized, no reason is apparent why outstanding choses in action may not, in like manner, be included in the lien of the mortgage and the privilege be extended to the mortgagor to collect and apply such choses in action under a stipulation that the lien of the mortgage shall include new accounts arising in the regular course of the business. In *Nugent* v. *McNeil Shoe Co., 62 N. J. Eq.* (*17 Dick.*) *583, 585,* the right to include outstanding book accounts in the lien of a mortgage is recognized. In any ordinary commercial business credit transactions are a well-recognized necessity, and the privilege of

a mortgagor to sell and replace mortgaged goods does not essentially differ in effect from the privilege of collecting and replacing choses in action. I see no reason why the lien of a chattel mortgage should not, by appropriate provisions contained in the mortgage, be preserved as to book accounts arising after the date of the mortgage.

Does the language of the mortgage in question include outstanding book accounts then existing and thereafter to be created? The authority given by the stockholders and directors to the executive officers was to execute a mortgage covering specific chattels named, and then adding:

"And all other goods and chattels and personal property of any kind' or character now or which shall hereafter be owned by the said Evening Union Printing Company."

Pursuant to that authority the mortgage was executed on certain enumerated chattels with the following language added:

"And all personal property of any kind or character now belonging to the said Evening Union Printing Company, or which may hereafter belong to the said Evening Union Printing Company, either by way of renewal of the goods and chattels above described, or by way of additions thereto, including the right and franchise to be a corporation, and also all of the estate, rights, titles, incomes and interest whatsoever, as well at law as in equity of the said party of the first part in and to the same."

The mortgage also made provision for mortgagor to continue its business in the regular course. The intention of the parties to include in the lien of this mortgage all of the assets of the mortgagor then existing and thereafter to be acquired in the progress of its business, is, to my mind, clearly manifest from the terms of the mortgage. Where the language used so clearly manifests a purpose to include all assets of mortgagor of every character, present and prospective, an over technical measurement of the specific words used should not be indulged in to defeat the general and manifest intention. No creditor of mortgagor could have been reasonably misled by the language used. I think it clear that the outstanding choses in action of mortgagor are covered by the lien of this mortgage. I do not find in the sink-

ing fund clause any element to modify this view. That clause does no more than adopt a plan for the operation of the business of mortgagor during the period preceding default. It cannot be treated as a stipulation for the application of the assets of mortgagor after default or after insolvency.

The other question presented by the appeal is whether a general manager of a corporation, who was also a stockholder and a member of the board of directors, is entitled to a "labor claim" for the two months' services rendered by him immediately prior to the appointment of a receiver.

The present claim is made under section 83 of the Corporation act. *P. L. 1896 p. 303.* The case of *England's Executors* v. *Beatty Organ Co., 41 N. J. Eq. (14 Stew.) 470,* was decided under the provision of the statute of 1869. *P. L. 1869 p. 1448; Rev. p. 188.* It was there held that the president of a corporation was not a laborer within the meaning of the old act. Section 83 of the present Corporation act is practically the same as section 1 of the act of April 8th, 1892. *P. L. 1892 p. 426.* Under the latter act it was held, in *Consolidated Coal Co.* v. *Keystone Chemical Co., 54 N. J. Eq. (9 Dick.) 309,* that the bookkeeper of a corporation, though a director, was entitled to the preference given by the act. It is there noted that the later act is broader in its scope than the former one; and the view is also taken that while the duties of a president of a corporation may well be confined to matters supervisory in their nature, those of a bookkeeper involve labor in the strict sense of the word. In *Campbell* v. *Taylor Manufacturing Co., 64 N. J. Eq. (19 Dick.) 622,* it is suggested that the preference given by this statute to employes of a corporation was probably created for the purpose of preventing a general exodus of the workmen employed by the corporation in anticipation of the failure of the company. I am impressed that in this suggestion is to be found the true purpose and underlying spirit of the act. While the duties of the present claimant may not have involved the degree of manual labor which ordinarily falls to a bookkeeper, yet I think it clear that he is included in the spirit and purpose of the legislation. The language of the statute is: "All persons doing labor or service of whatever character, in the regular employ of such corporation."

If the recognized purpose of the statute be the preservation of the organized operative force of a corporation in a time of embarrassment, this language clearly must be held to include the general manager, even though he be a director and therefore a member of the board which employed him. His retention as the immediate supervisor and organizer of the operative force of employes is peculiarly essential to the accomplishment of the purposes of the act. Let his claim be allowed.

By the eighty-fourth section of the Corporation act these labor claims are postponed to the lien of a chattel mortgage which has been recorded more than two months next preceding the date when proceedings in insolvency shall have been actually instituted against the insolvent corporation.