### PIERCE et al. v. BOUND BROOK ENGINE & MFG. CO. et al.

(District Court, D. New Jersey. June 30, 1921.)

1. **Corporations ☞478—After-acquired property clause in mortgage construed.**

   A mortgage to secure an issue of bonds, executed by a corporation which had just purchased a manufacturing business as a going concern, and covering its real estate, "also all buildings, plant, works, shops, equipment, tools, appliances, stationary or portable, and all other real and personal property of every name and nature, now owned or which may hereafter be acquired by the company," with privilege of selling and renewing, *held* not limited as to after-acquired personal property to that of the kinds specifically enumerated, but to include raw material, work in process, finished product, and choses in action owned by the mortgagor at the time of foreclosure for default.

2. **Receivers ☞66—Mortgagee entitled to order for surrender of property to receiver.**

   In a suit to foreclose a mortgage given by a manufacturing corporation, covering its plant and also personal property, complainant *held* entitled to an order requiring a purchaser of the mortgagor to surrender to the receiver choses in action covered by the mortgage, without a preliminary determination of what, if any, such choses in action it may have in its possession.

In Equity. Suit by Hugh C. Pierce and V. Mott Pierce, trustees, against the Bound Brook Engine & Manufacturing Company and others. Decree for complainants.

Lindabury, Depue & Faulks, of Newark, N. J. (Joseph H. Morey, of Buffalo, N. Y., of counsel), for complainants.

Thomas G. Haight, of Jersey City, N. J., for defendant Bound Brook Engine & Mfg. Co.

John J. Foulkrod, Jr., of Philadelphia, Pa., and Joseph Beck Tyler, of Camden, N. J., for ancillary receivers of Badenhausen Company.

BODINE, District Judge. The complainants filed a bill to foreclose a mortgage given by the Bound Brook Engine & Manufacturing Company to them, dated July 11, 1917. The mortgage secured the payment of 200 bonds, of $1,000 each, with interest at 5 per cent. Some of the bonds fell due each year thereafter, and all were to be paid by July 11, 1927. The mortgage covered a factory building and the land on which it stood, in Middlesex county, this state. The mortgage was recorded both as a real estate and chattel mortgage.

The Bound Brook Engine & Manufacturing Company defaulted in the payment of those bonds, which have fallen due. It also defaulted in the payment of all coupons bearing date January 11, 1919, and subsequent thereto. The mortgagor also defaulted in the payment of insurance premiums required under the mortgage, and in the payment of the real estate taxes for the years 1919 and 1920.

[1] The sole question raised before me is with respect to the extent of the personal property covered by the terms of the mortgage, and for the determination of that question the following sections of the mortgage are material. The mortgage, after a description of the real estate by metes and bounds, provides:

"Together with all and singular the tenements, hereditaments, profits, privileges, advantages, and appurtenances to the same belonging or in anywise appertaining, and the reversions, remainders, tolls, incomes, rents, and issues thereof, and all the estate, right, title, interest, property, claim and demand whatsoever as well in law as in equity, of the party of the first part of, in, and to the same, and to every part or parcel thereof; also all buildings, plant, works, shops, equipment, tools, appliances, stationary or portable, and all other real and personal property, of every name and nature, now owned, or which may hereafter be acquired, by the company. * * *

"Fifth. Until default shall be made in the payment of the principal or interest of any of the bonds hereby secured, or any part thereof, or in the performance or observance of any condition, covenant, or agreement hereof, on the part of the company, the company shall be permitted and suffered to possess, operate, manage, and enjoy the real and personal property hereinbefore described and hereby mortgaged, with the appurtenances, and to receive and retain to its own use the income, rents, issues, and profits thereof, in the same manner and with the same effect as though these presents had not been made.

"Sixth. The company shall be permitted to alter, remove, sell, and dispose of any buildings, fixtures, machinery, or other appurtenances upon the mortgaged premises, or any personal property on which this indenture is or may become a lien: Provided always that the company shall, and it hereby agrees that in such case it will either use the proceeds of such sales in purchasing other real or personal property for the business of the company, or in improving or developing its real estate or plants, or that it will acquire other real estate or personal property for its business equal in value, at cost to the company, to the property disposed of, or that it will pay to the trustees the fair value of the property disposed of, to be agreed on 'between the company and the trustees, or fixed by an appraiser."

The complainants contend that the words "and all other * * * personal property, of every name and nature, now owned or which may hereafter be acquired by the company," includes raw materials, work in process, finished product, and choses in action. Their claim, however, does not include any property, or the proceeds thereof, placed at the plant by the Badenhausen Company, which took over the plant of the mortgagor, or by the ancillary receivers of the Badenhausen Company, provided, however, that the property, if any, so placed by the Badenhausen Company, or the ancillary receivers thereof, has not been so mingled with the property claimed to be covered by the mortgage as to have lost its identity, so that a separation will be impossible.

It is not necessary now to consider questions with respect to property, or the proceeds of property, placed in the plant by others than the

mortgagor. Possible resulting legal questions will depend so largely on fact that the whole problem may best be settled after a reference. Addressing the problem as to whether the mortgage, by the terms "and other * * * personal property, of every name and nature, now owned or which may hereafter be acquired by the company," covers raw materials, work in process, finished product, and choses in action, it is essential to discover the intent of the parties, in so far as it has been expressed in the instrument of mortgage itself. This intent would be perfectly clear, but for the fact that the words, which I have above quoted follow certain specific words, and the defendants contend that the words which I have quoted are not words of enlargement, but are limited in their scope to the inclusion within the mortgage of after-acquired property of the precise kind as that specifically described as then covered by the mortgage, and in support of this argument have referred to the fifth and sixth clauses of the mortgage, which I have above referred to.

It seems to me that the refutation of this argument is the statement of it. The fifth clause provides that the mortgagor may operate, manage, and enjoy the mortgaged property until default, and retain for its own use the income and profits thereof. The sixth clause provides that on the sale of any real or personal property covered by the mortgage the proceeds shall be used in purchasing other property of equal value. Clearly these provisions contemplate that what might be termed the capital assets be kept intact and subject to the mortgage, while the income and profits derived from the use thereof shall inure until default to the benefit of the mortgagor. Hence I have no hesitation in saying that the intent appears clear that, when the mortgage provides that it shall cover, in addition to that property specifically described, "all other * * * personal property, of every name and nature, now owned or which may hereafter be acquired by the company," that it was in the contemplation of the parties that the mortgage covered that raw material, that work in process, that finished product, and those choses in action which were then owned and which thereafter might be acquired to replace those which were sold, and it seems to me that to decide otherwise would be to substitute for the security offered at the time the mortgage was given a much less valuable security.

The mortgage is dated the same day that a conveyance was made to the Bound Brook Engine & Manufacturing Company by the American Engine & Electric Company of all of its property. The property acquired by the mortgagor was a going concern. Is it not reasonable to suppose that on the same day that it acquired a going concern that it offered as security for a loan of $200,000 a manufacturing plant stripped of raw materials, stripped of work in process, stripped of finished product, and stripped of things in action, when the mortgage specifically provides that it shall cover "all other personal property, of every name and nature, now owned or which may hereafter be acquired."

Rules of construction must not be invoked to defeat the intent of the parties. General words in a mortgage such as this have been held

by the New Jersey courts to include book accounts. Commercial Trust Co. v. Wertheim Coal Co., 88 N. J. Eq. 143, 102 Atl. 448, affirmed Same v. Drayton, 90 N. J. Eq. 264, 105 Atl. 241. See, also, Buvinger v. Evening Union Printing Co., 72 N. J. Eq. 321, 65 Atl. 482. In that case the mortgage covered certain specific articles of furniture, printing presses, and chattels used by a newspaper printing company, "and all personal property of any kind or character now belonging to the said Evening Union Printing Company, or which may hereafter belong to said * * * company." The opinion of Vice Chancellor Leaming clearly indicates that chattels used in the regular course of business were included within such general language, and that the general language was also broad enough to apply to choses in action. The following from his opinion is pertinent:

"This court has repeatedly held that a mortgagor of chattels may be permitted to transact business and make sale of the mortgaged chattels in the regular course of his business, and that in such cases the lien of the mortgage, if so stipulated, will attach to the chattels from time to time acquired to supply the place of the chattels sold. With these rights of a mortgagor and mortgagee recognized, no reason is apparent why outstanding choses in action may not, in like manner, be included in the lien of the mortgage and the privilege be extended to the mortgagor to collect and apply such choses in action under a stipulation that the lien of the mortgage shall include new accounts arising in the regular course of the business."

The illuminating brief filed by counsel for complainants contains a wealth of authority. A few of the authorities cited illustrate the principle. In the case of Ringer v. Cann & Bernard, 3 Meeson & Welsby's Reports, 243, Lord Chief Baron Abinger, construing a lease in which particular words were used, followed by general words, said:

"I cannot see why the words which are sufficiently comprehensive to include everything he had should not be held to pass the leasehold estate."

—which was not particularly described. And again Lord Esher, Master of the Rolls, in speaking of the doctrine of ejusdem generis, said:

"Nothing can well be plainer than that to show that prima facie general words are to be taken in their larger sense, unless you can find that in the particular case the true construction of the instrument requires you to conclude that they are intended to be used in a sense limited to things ejusdem generis with those which have been specifically mentioned before."

For other cases in support of the same principle see Thurber v. Minturn, 62 How. Prac. (N. Y.) 27, Goulding v. Swett, 13 Gray (Mass.) 517, and Veazie v. Somerby, 5 Allen (Mass.) 280.

[2] Complainants also seek a present assignment to the receiver in this proceeding by the ancillary receivers of the Badenhausen Company of such choses in action as the Bound Brook Engine & Manufacturing Company may have had, which are covered by the terms of this mortgage. The receivers of the Badenhausen Company deny that there are any such choses in action, and contend that the existence of choses in action must be established by proof before this court can make an order with respect thereto. Proof with respect to the existence or nonexistence of a chose in action appears to me to be not a proper disposition of the matter. If there be choses in action, the property of the

Bound Brook Engine & Manufacturing Company, in existence at the time the receiver in the foreclosure proceeding was appointed, and covered by the terms of the mortgage, clearly that receiver has the right to the legal title thereto. If they be nonexisting, the attempt to enforce these rights will demonstrate their nonexistence far better than could be determined by proof, which would, of course, fail to finally establish their extent. The ancillary receivers of the Badenhausen Company, the owners of the stock of the Bound Brook Engine & Manufacturing Company, can suffer nothing in the loss of the bare legal title to such choses in action as may exist, and the bare traverse of their existence cannot, under the circumstances, be a basis for a court of equity to refuse the transfer.

In conclusion, the mortgage lien of the complainants' mortgage covers, in addition to the real estate, machinery, and fixtures, raw materials, the work in process, finished product, and the choses in action Complainants are entitled to a decree of foreclosure for the amount proved, the assignment of the legal title of the ancillary receivers of the Badenhausen Company to the choses in action, the property of the Bound Brook Engine & Manufacturing Company which that company may have owned and subject to the mortgage, and to a reference to a master to take proof with respect to the precise articles of after-acquired property included within the terms of the mortgage as herein found included. The master shall also take proof with respect to the value, separability from the mass, and the circumstances under which property of the sort covered by the mortgage was placed upon the property, if any, by the Badenhausen Company, or the ancillary receivers thereof.

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes