# CHARLESTON.

KIMBALL *et al.* v. SUNDSTROM & STRATTON Co. *et als.*

Submitted May 1, 1915.    Decided May 15, 1917.

1.  CORPORATIONS—*Foreign Corporation "Doing Business in State"—Employers' Lien for Wages—Statute.*
    Employees of a foreign corporation, organized to do general contract work, and with local offices established and maintained in this state for the conduct of its business here and in adjoining states, and which has been actively engaged in construction work in this and other states, and has its plant and property located in this state, and continues to maintain its offices here, where it keeps books and carries on correspondence in relation thereto with a view to obtaining new contracts, etc., is "doing business in the state," within the meaning of sections 7 and 8, of chapter 75, Code of West Virginia, giving such employees employed in the state a lien for the value of the work and labor performed by them, upon all the real and personal estate of such corporation, notwithstanding said corporation awaiting new business, is not during the time covered by the claims of such employees actually engaged in doing any construction work.    (p. 525).

2.  MASTER AND SERVANT—*Lien for Wages—Attachment—Priority.*
    The levy of an attachment upon the property of such corporation in the suit of one or more of its creditors, and its seizure and possession by the sheriff thereunder, will not deprive such employees of the liens given by said statute, nor from perfecting the same by record as provided thereby; but by proper construction of the statute priority of such liens will be limited to the value of the work and labor performed prior to the levy of such attachment.    (p. 528).

3.  SAME—*Lien for Wages—Amount.*
    When such employees are working upon fixed salaries or wages
    80 W Va.

previously agreed upon between them and such corporation, the value thereof when such employees have continued to give their time to the business will be deemed to be the amount agreed upon and determined by the contract. (p. 530).

4. SAME—*Lien for Wages—Assistant Treasurer—Every Workman, Laborer, or Other Person.*

Nor will the fact that one of such employees, not a stockholder or director, for convenience, has in addition to his other duties, been designated assistant treasurer; deprive him of the benefit of the lien given by the statute. The statute includes ''every workman, laborer, or other person.'' (p. 530).

Appeal from Circuit Court, Berkeley County.

Suit by C. C. Kimball and others against the Sundstrom & Stratton Company, the Marion Steam Shovel Company, and others, to enforce a lien for the value of work and labor performed. Decree for plaintiffs, and the Marion Steam Shovel Company appeals.

*Reversed in part.' Affirmed in part. Remanded.*

*Downey & Henson,* for appellant.

*H. H. Emmert,* for appellees Coffey and Kimball.

MILLER, JUDGE:

In a suit to enforce a lien for the value of work and labor performed and alleged to have been acquired and perfected by plaintiff, pursuant to sections 7 and 8, chapter 75, Barnes' Code, against the personal estate of the defendant corporation, others claiming similar liens, and liens by judgment or attachment, were made defendants, and by an order of reference in the cause all were convened before a master commissioner, who took proof, and made his report, to which exceptions were filed by some of the creditors, and upon which the decree appealed from was pronounced.

Upon this appeal, awarded upon the petition of The Marion Steam Shovel Company, an attaching creditor, and the largest of the creditors of the defendant corporation, the validity of the lien decreed in favor of the plaintiff Kimball, and of a like lien decreed in favor of the plaintiff P. V. Coffey, is challenged.

The debtor company is a New York corporation, engaged in contract work, and particularly in the business of constructing railroads. Beginning with the year 1911, it had contracts with the Baltimore & Ohio Railroad Company for doing a large amount of work in Berkeley County, near the City of Martinsburg, West Virginia, and with the Cumberland Valley Railroad Company for doing similar work around or near the City of Chambersburg, Pennsylvania, and also for building a new main line from Bedington, in Berkeley County, to the Potomac River. The work of executing all these contracts was completed in the spring of 1914, thus extending over a period of about three years. During the whole of this time the company maintained offices for the transaction of its business in connection with these contracts in the City of Martinsburg, and the appellees Kimball and Coffey were put in charge thereof, the latter as bookkeeper. Kimball, by resolution of the board of directors, had sometime before this work began, been designated assistant treasurer, and the president of the company swears that he was also paymaster and general supply man, but that he had no connection as stockholder or director with said company. Both these men were employed at fixed salaries, and it is conceded they had never been discharged, but had remained on duty up to September 12, 1914, the day to which their accounts were carried. The proof is that while nothing was being done in the way of construction work after February, 1914, the company continued to maintain its office in Martinsburg, where considerable correspondence was carried on, and the property and plant of the company was looked after by Kimball and Coffey, apparently with the view of conserving it, and getting new contracts, much of it pertaining to the work ordinarily falling to a superintendent.

The accounts of Kimball and Coffey, as filed and proven, and as allowed and decreed, were, in the case of Kimball, for nine months wages, from December 12, 1913, to September 12, 1914, at $225.00 per month, $2,025.00, in the case of Coffey, for wages for the same period at $150.00, per month, $1,350.00. The attachment of the appellant, The Marion Steam Shovel Company, was sued out and levied on the

property of the defendant company, on June 11, 1914, amounting to $18,954.04, with interest and costs, and the property was taken possession of by the sheriff, though really left in charge of the representatives of the company for safe keeping.

The grounds urged and relied on to reverse the decree in favor of Kimball and Coffey, are as follows: (1) That the Sundstrom & Stratton Company was not during the time covered by the liens doing business in West Virginia, within the meaning of the statute; (2) That the said liens were not filed and perfected within sixty days from the time claimants ceased to perform labor within the meaning of the statute; (3) That no such liens could be acquired for services rendered upon property while in custodia legis, without the express sanction of the court; (4) That the value of the alleged services was not shown, and if implied, was much less than the amount decreed, and that Kimball was an officer of the company.

Section 7, of chapter 75, of the Code provides: "Every workman, laborer, or other person who shall do or perform any work or labor, by virtue of any contract for any incorporated company *doing business in the State,* shall have a lien for the *value* of such work, or labor upon all the real estate and personal property of said company, and such lien shall have priority over any lien *created by deed or otherwise* on such real estate or personal property, *subsequent to the time when the said labor was performed,*" etc. We have italicised certain of the provisions of this statute for the purposes of the subsequent consideration thereof.

On the first proposition, was the defendant company "doing business in this state", within the meaning of the statute? It was not throwing dirt, putting down ties and steel rails, or actively engaged in building railroads during the time covered by these liens, but was certainly so far carrying on business here as to continue to maintain its office, to provide for the care of its property, and by vigorous correspondence carried on endeavoring to tide over its financial difficulties, defend actions in the courts, and to get on its feet again for the purposes of future operation. The main

portion of its plant which was sold by the sheriff for some sixteen thousand dollars was located here, and can it be said that although employees were necessary for the preservation of its property and the conduct of this necessary business, the company was not doing business within the meaning of the statute. Are these employees, not paid otherwise, because of the financial distress of the company, to be denied liens therefor, by a narrow construction not justified by the language of the statute? We do not think the statute should be so construed. If such a construction should prevail then the employees of every contracting company, whether a West Virginia corporation, or organized under the laws of some other state, would never be protected for labor or work performed when the company was not actually engaged in its regular work of operation. The caretaker, the man in charge of its live stock, and the office force engaged in keeping the books, carrying on correspondence, etc., would not, in the event of the insolvency of the company, be protected against the claims of other creditors.

We cannot think such was the legislative intent as expressed in the language of the statute. Such a construction would be too narrow, and not within the range of reason or common sense. The only authority cited by counsel as combating this position is *Sullivan* v. *Sullivan Timber Co.,* 103 Ala. 371. The question in that case, presented by plea in abatement, was whether the defendant company, which had an agent and maintained an office in the City of Mobile, and where it carried on business, was also doing business in another county, Conecuh, where it had some unused property and a caretaker thereof in charge, to preserve it, pay taxes thereon, and preserve the title, within the meaning of the statute, and it was held: "The care by a foreign corporation, through its agent, of unused property, and the payment of taxes thereon, the payment of which is essential to the preservation of title in the owner, are not the exercise of corporate powers or franchises, nor the transaction of the business, or any part thereof, for which the corporation was created and organized, in such sort as to constitute the doing of business in the county where such property is situated, within

the meaning of the constitution; and these acts do not give the courts of such county jurisdiction of a personal action against said corporation.''

In a later Alabama case, *State* v. *Anniston Rolling Mills,* 125 Ala. 121, a license tax case, the question was whether the defendant, which had leased its plant, and the only business done by it during the license year was to collect its rent, pay taxes, lend some money and to collect the interest thereon, and doing such business as was incident to the preservation of its property, was ''doing business as a corporation'' within the license statute, and it was decided that it was not. In that case the court says: The tax imposed by the statute is a license tax for ''doing business as a corporation'', and not for the mere privilege of existing as a corporation. The real test is, is the corporation engaged in the transaction of business for which it was organized or created, citing *Beard* v. *U. & A. Pub. Co.,* 71 Ala. 60, and *Sullivan* v. *Sullivan Timber Co., supra.*

Most of the cases we find, relating to this subject, involve questions of taxation, jurisdiction by legal process, and the right of foreign corporations to do business in the state, and are unlike the case we have here, involving the right of employees or workmen, performing work or labor, to liens therefor upon the property of a corporation, and to the benefits of the statute.

If we should give the statute the construction contended for by counsel for appellant, no employee or workman of a corporation, domestic or foreign, would be entitled to the benefits of the statute, unless actual operations were being carried on. If the plant of such corporation should be shut down temporarily, awaiting orders for the product, or because of depression in business, or from whatever cause, those necessarily employed to look after the business, preserve the property, and in carrying on the correspondence, etc., would be denied the benefits of the statute, and in case of the insolvency of the corporation, be obliged to take their places along with the general creditors. We do not think our statute should be given that construction.

Section 30, of chapter 54, Barnes' Code, prescribing cer-

tain qualifications of foreign corporations to do business in this state, imposing penalties, etc., contains this provision: "But nothing herein contained shall be construed to lessen the liability of any corporation, which may not have complied with the requirements of this section, upon any contract or for any wrong." And in *Toledo Tie & Lumber Co.* v. *Thomas*, 33 W. Va. 566, construing this statute, it was distinctly decided, that the omission of a foreign corporation to comply with the regulations prescribed thereby, and imposing a penalty for failure to do so, does not render its contracts made before compliance with such regulation void and unenforceable in this state. To the same effect is *Burkheimer* v. *National Mut. B., etc., Ass'n.,* 59 W. Va. 209, 53 S. E. 372.

We, therefore, hold, that where, as in this case, a foreign corporation establishes and maintains offices in this state for the transaction of its business, and employs persons there to look after its general business, preserve its property located here, and with the view of continuing its business in this state, such employees are entitled to the benefits of the lien created by the statute, for the value of the work and labor performed by them, although the plant of such corporation be for the time shut down, and no other work is being actively carried on by such corporation.

The next proposition, that the liens of appellees were not perfected within sixty days from the time they ceased to perform labor, within the meaning of the statute, we must also deny. This proposition is based upon the theory relied upon in the first, that the defendant company ceased to do business January 7, 1914, when it completed the contracts it then had on hand, and upon the further proposition that the property upon which the liens are sought to be enforced was taken into possession by the sheriff, June 11, 1914, and that the liens were not filed within sixty days from either of these dates. What we have said upon the first proposition constitutes a sufficient answer to the argument based upon the first of these theories. We will answer the argument based upon the theory lastly advanced in disposing of the proposition next relied upon.

On the third proposition, that no lien can be acquired for

services upon property in *custodia legis,* without the express sanction of the court, the record shows that the appellees Kimball and Coffey did intervene in the attachment suit of the Marion Steam Shovel Company, appellant, the suit in which the property was sold, and there set up their liens, pursuant to section 23, chapter 106, of the Code, and that therein the court set aside forty seven hundred dollars of the purchase money to await the determination of their rights in the premises. This, it is contended, is a sufficient answer to the argument that the sanction of the court was required.

But is the proposition well founded that such lien cannot be acquired after the property of a corporation is by legal process taken into the custody of the sheriff? If such be the proper construction of the statute then no laborer or workman, after the property of a corporation has been seized on legal process, can thereafter perfect his lien for work and labor performed, prior or subsequently to such process. The statute, section 7, provides, that "such lien shall have priority over any lien created by deed or otherwise on such real estate or personal property, subsequent to the time when the said labor was performed." That the liens were filed for services for nine months within sixty days from the time claimants actually ceased to work, is conceded. And although they continued to work after the property was seized by the sheriff, there is nothing in the statute precluding them from perfecting their lien for work and labor performed prior or subsequent to such seizure, if filed within sixty days after ceasing such labor, as provided by the statute. Certainly the mere seizure of the property by legal process for the debt of one creditor will not prevent an employee of a corporation from perfecting his lien given by statute. The question thereafter would be one of priority only, and we think the proper construction of said section 7, in cases like this, would be to give priority to the workman or laborer for that part of the labor performed prior to such attachment, and to subordinate the value of the labor performed thereafter to the lien of the attachment. This construction will give full effect to the statute. The decree appealed from

subordinated the lien of the attaching creditor to the entire claim of Kimball and Coffey. In this we are of opinion the court erred, and for which the decree must be reversed in part. This conclusion we think is warranted by the holding in *Griffith* v. *Blackwater Boom and Lumber Co.,* 46 W. Va. 56.

. Nor can we affirm the last proposition, that the value of the services of Kimball and Coffey were not proven, and that Kimball was an officer of the company. As already stated these employees had fixed salaries. Their services may not have been as valuable to the corporation as when more actively engaged in doing contract work, but they were never discharged, and they continued to perform the duties required of them, and if the corporation had succeeded, as it was expected, in relieving itself from its financial difficulties, who can say that the services of these men would not have been as valuable as when operations were in progress, and worth all it may be required to pay them. At all events on the evidence before the commissioner he found in favor of claimants the full amount of their claims, and the court below confirmed his report.

But is Kimball cut out because he was assistant treasurer, from laying his lien upon the property of the corporation? He was not a stockholder or director of the company, and the evidence satisfies us he was made assistant treasurer of the corporation for mere convenience in its operations. This was not his principal business in connection with the corporation. He swears that as to a large portion of the work he was superintendent; he at least performed many of the duties of a superintendent. There is nothing in the statute to cut out such an employee. The statute covers "every workman, laborer, or other person." In *Grant* v. *Cumberland Valley Cement Co.,* 58 W. Va. 162, we held that a superintendent of a corporation was included within the statute. And in *Richardson* v. *Norfolk & W. R. Co.,* 37 W. Va. 641, 17 S. E. 195, Judge DENT says, by this section every employee of an incorporated company, from the track hand and coal heaver to superintendent of the railroad or mines is secured a lien on all the company's property for the price of

his hire. In *Wetzel & T. Ry. Co.* v. *Tennis Bros. Co.,* 75 C. C. A. 266, this statute was held to include a corporation employed to supervise the construction of an electric railroad, by means ·of the personal services of its officers and servants. So we think there can be no question as to the validity of Kimball's lien.

Our conclusion, therefore, is to reverse the decree in so far as it adjudges to Kimball and Coffey priority for the full amount of their liens, but to affirm the decree in all other respects, and to remand the cause with directions to ascertain the amount of said liens accrued to the date of the attachments, and to give the liens priority for the amounts thereof over all other creditors except creditors of the same class, if there be any, and subordinate the balances thereof to all prior liens by attachment or otherwise acquired upon the property of said company. And the appellant will recover against said Kimball and Coffey its costs incurred in this court.

*Reversed in part. Affirmed in part. Remanded.*