# CHARLESTON.

Louis Shore *v.* United Auto Supply Company *et al.*

(No. 6341)

Submitted February 19, 1929. Decided February 26, 1929.

*Payne, Minor & Bouchelle,* for appellant.
*Hall, Ballard & Hall,* for appellees.

LIVELY, JUDGE:

Louis Shore, a minority stockholder, instituted this suit for the purpose of winding up the affairs of the United Auto Supply Company, a corporation, in which suit Kanawha Valley Bank intervened by petition setting up a claim against the corporation for services rendered by J. H. Mendel to the corporation, amounting to $2,175.00, for which he had filed a laborer's lien claiming priority under the provisions of section 19, chapter 75, Code, and which claim had been assigned by him to the bank. The decree appealed from denied the relief prayed for, and dismissed the petition.

The sole question here for decision is, whether Mendel has the right of lien against the insolvent corporation. His lien, if he has the right to one, was properly preserved in accordance with the statute. The statute reads: "Every workman, laborer or other person who shall do or perform any work or labor, for any incorporated company doing business in this state, by virtue of a contract either directly with such incorporated company or with its general contractor or with any sub-contractor shall have a lien for the value of such work or labor upon all real estate and personal property of said company, etc." The business of the corporation consisted in buying and selling automobile accessories and installing the same for purchasers, and it operated in a store room on one of the principal streets in the city of Charleston, West Virginia. Mendel, by agreement with the other stockholders, was placed in charge of the business as general manager, had devoted all of his time thereto in purchasing the stock of goods, selling the same over the counter as a salesman, installing accessories purchased by customers, and trimming the show windows, cleaning out the store, and doing general work of that character in selling the goods and keeping the premises in attractive appearances. The salary agreed upon was $75.00 per week. He performed these services up to the time of the appointment of a receiver in·this suit and at such time his back salary unpaid amounted to $2,175.00, the amount claimed as a prior lien by Kanawha Valley Bank, assignee of Mendel. Thus far it would seem

that there could be no question of the right of Mendel to claim a lien for services under his contract with the other stockholders under the provisions of the statute quoted, which are broad, giving to *any person* who shall do any labor under contract with a corporation the right to a lien for his services. But appellees would justify the decree because Mendel owned 50% of the stock and was one of the directors of the corporation; and because he had no formal contract as general manager, and workman in the store, with the corporation.

The corporation was formed in April, 1926, and the capital stock of $16,000.00, fully paid, was owned by J. H. Mendel who subscribed and paid for one-half of the stock, and by M. A. Mendel and Louis Shore each owning one-half of the remainder. That is, J. H. Mendel paid in and owned stock corresponding to $8,000.00; Louis Shore and M. A. Mendel each owned stock amounting to $4,000.00, making in all the $16,000.00 paid in. Two other incorporators were included as dummies for purpose of incorporation. J. H. Mendel was made president and treasurer; and by a paper writing entered into by all of these stockholders, J. H. Mendel was made manager and required to devote all of his time to the business of the corporation at a salary of $75.00 per week. He received no salary as president or director. His salary agreed upon was for services as general manager and salesman in the store. He conducted the business as general manager, bought the goods, issued checks on the treasurer for the running expenses of the business, including his salary, until the corporation became involved in financial troubles when he ceased to pay his salary, and in November, 1927, its affairs became so involved that Shore, minority stockholder, instituted this suit for the purpose of winding up its affairs. A receiver was appointed, Mendel's services dispensed with, and within the statutory period he filed and recorded his laborer's lien which is now in controversy. As above stated, appellees claim that Mendel had no contract with the corporation for his services as above set out and therefore cannot claim the benefit of the statute which requires laborers or workmen or other persons to have a contract with the corporation. The paper writing entered into immediately after

the incorporation is a part of the corporate records as much so as if it was spread on the record. It pertained to the conduct of the corporate affairs. All of the stockholders agreed to the contract and employment. They, that is, the others, were directors and it is a reasonable conclusion that if they had acted in formal capacity they would have confirmed what they did as individual stockholders. Besides, Mendel performed services for the corporation and all connected with it knew of his services and knew what he was receiving. A contract would be implied. *Kennedy* v. *Bank,* 67 W. Va. 475; *Richardson* v. *N. & W. Ry. Co.,* 37 W. Va. 641.

The decisions of the courts are influenced by the particular statutes involved in each case. Some of the statutes, including ours, above quoted, are very broad and comprehensive; others are restricted to certain classes of persons. For instance as to the latter class of statutes, the Texas Act gave a lien for payment of wages of ''any clerk, accountant, bookkeeper, artisan, craftsman, factory operative, mill operative, servant, mechanic, quarryman, or common laborer, farm hand, male or female,'' and it was held that a superintendent of a brick company was not included, although at times he performed the labor of an ordinary hand, because the lien did not attach in favor of persons not enumerated in the statute, although they might occasionally perform duties of those enumerated; while one of the enumerated class had a lien for all his services, although some of his work was not within the duties usually assigned to his class. The superintendent of the brick plant not being within the enumerated classes named in the statute, it was held to be immaterial to the decision whether he was a stockholder, director or officer of the company. *Lindale Brick Co.* v. *Smith,* 118, S. W. 568.

Likewise the New Jersey Act in force in 1894 gave *laborers* in the employ of an insolvent corporation a preferred lien, and while ''laborers'' was construed to include all persons doing labor or service of whatever character for, or as workmen or employees, in the regular employ of the corporation, the president of the corporation was not entitled to a lien for his services in assisting the manager thereof. The word

"laborers" did not include officers. *Weatherby* v. *Saxony Woolen Company,* 29 Atl. 326. The same holding was made prior thereto in *England's Executors* v. *Beatty Organ Co.,* 41 N. J. Eq. 470. Likewise the New York statute of 1885, provided that the *wages* of the employees, operatives and laborers of a corporation in the hands of a receiver should first be paid, and it was held that only those laborers and employees who were paid *wages* for manual labor and the like as distinguished from those paid salaries or fees, were preferred. *Matter of Stryker,* 70 Am. St. Rep. 489. In that case a clerk and bookkeeper, a superintendent and a draftsman, each employed at a *salary,* were denied preference.

Illustrative of the other class of statutes more comprehensive in their terms is that of Washington, (section 1149, Remington's Compiled Statutes), which provided, in substance, that *every person* performing labor (for any corporation) shall have a prior lien to the extent of moneys due him for labor performed within six months next preceding the filing of his claim. And it was held in *Cavanaugh* v. *Art Hardware & Mfg. Co.,* 214 Pac. 152, (decided in 1923) that an officer of a corporation who performed manual services outside his duties as such officer had a right to a lien. And in *Brown* v. *Wilcox Lumber & Logging Co.,* 118 Wash. 336, 203 Pac. 949, a director and manager who performed manual services clearly outside of his duties as such officer was given preference in payment for such services. It will be noted that the statute included *every person* performing labor. The statute of South Dakota provided that every miner *or other person* who at the request of the owner shall perform labor on such mine, shall have a first lien, and in *Hahn* v. *Anaconda Gold Mining Co.,* 128 N. W. 128, it was held that the superintendent and manager whose duties required him to perform manual labor and who actually did so was entitled to the lien for not only his manual labor, but for his services as general manager and superintendent, his employment being one entirely indivisible employment; and further, the fact that the employee was a stockholder and director would not preclude the employment or prevent his statutory lien; citing *Mining Co.* v. *Cullins,* 104 U. S. 176, where a

similar statute of Utah had been so construed by the U. S. Supreme Court. In accord is *Empire Drug Co.* v. *Smith,* 83 So. 458, where a person employed as "manager, clerk and bookkeeper" was allowed his lien under a statute which allowed such lien to "bookkeepers, clerks, agents, porters and other employees."

A casual reading of our statute above quoted will show that its terms are comprehensive as to persons and the services performed. Not only workmen and laborers are entitled to the lien, but also *any other person* who shall do or perform *any work* or labor. The phrase is in the disjunctive, using the word "or." And the terms work or labor are used, indicating the broad scope of the act. The comprehensiveness of the statute is emphasized in the expression of JUDGE DENT in *Richardson* v. *N. & W. Ry. Co.,* 37 W. Va. 641, found on page 644, where, in discussing the statute, he says: "By this section (present section 19) every employee of an incorporated company from the track-hand and coal heaver to the superintendent or a railroad or mines is secured a lien on all the company's property for the price of his hire." We think it is clear that the statute accords to Mendel the right of lien for his services as manager, under the contract, which required him to give his entire time to the business, in carrying out which, he labored in the store as above stated. He received no salary as president or director, and no claim for exclusion is made on those grounds. What then is there in the statute, or under public policy which bars him from his right of lien? Surely nothing in the statute. There is no word or expression which bars him from the comprehensive class of *any person who performs work or labor,* because he is a stockholder, officer or director. To exclude him from his lien under public policy would be on grounds hazy and unsubstantial, for the policy of a state is generally determined by its constitution, legislative amendments, the decisions of its courts, and perhaps, the unquestioned departmental rulings of long standing. *Pike* v. *State Board,* 113 Pac. 447; *U. S.* v. *Texas-Missouri Freight Association,* 17 Sup. Ct. 540. The contract here involved is not contrary to public policy for it is not *malum in se,* nor *malum pro-*

*hibitum.* Contracts of this kind are made every day, and are necessary to effective conduct of corporate business in many instances. Why should not a stockholder labor to further corporate affairs, and who would be more interested in giving effective service for the success of the company? But the reason suggested for precluding Mendel from his lien, although his contract is valid, is that thereby he could perpetuate a fraud on the creditors by taking preference over them when the corporation becomes insolvent. This suggestion presupposes a fraudulent intent formed when the contract is made or in the progress of the business, and with a design to wreck the corporation by giving salaries to officers and stockholders without corresponding service and return to the corporation. And some of the decisions, notably that of *England's Executors* v. *Beatty Organ Co.,* 41 N. J. Eq. 470, above cited, and *Alexander* v. *Farrow,* (N. C.), 66 S. E. 209, which follows and approves *England's Executors* v. *Beatty Orgon Co.,* construed their respective statutes not to extend to the benefit of the lien to officers, stockholders and directors because such construction would open the door to abuses and frauds against innocent creditors. While it is the general policy of all governments to declare invalid contracts which are inimical to public welfare, and thus prevent frauds and abuses, yet when a contract is legal and not inherently bad, the courts are quick to find and correct frauds and abuses which may arise therefrom. Contracts between persons in close and confidential relation are closely scanned for detection of fraud where the rights of others are involved, and are quickly condemned. In the case before us there is no claim of fraud. The contract was agreed upon at the inception of the corporation and there is no suggestion or inference that the purpose or intent was to wreck the corporation for the benefit of the parties to the contract. They had then contributed the full measure of their stock in cash. There is no evidence of inadequacy of service on the part of Mendel. Even when the company became financially embarassed, he refrained from checking out his salary as it became due. He could have done so. We can perceive no fraud or fraudulent **intent.**

Adverting to the New Jersey statute under which *England's Executors* v. *Beatty Organ Co., supra,* was decided: The statute gave a lien to "laborers," and the word "laborer" was held not to include officers, the court giving as a reason for not including officers of a corporation in the category of "laborers," that abuses would creep in and fraudulent practices arise. However, the statute of North Carolina under which the decision in *Alexander* v. *Farrow, supra,* was rendered, and which decision cites and approves the New Jersey case, was perhaps as comprehensive as ours, for it provided that the laborers and workmen *and all persons* doing labor or service of whatever character in the regular employment should have a lien in case of insolvency of the corporation. Public Laws N. C., Session 1901, chapter 2, section 87. The court in the second point of the syllabus held that officers of the corporation were not within the statute providing that, in case of insolvency, "laborers" and "workmen" shall have lien for their services. Evidently the court construed the clause in the statute, "and all persons doing labor" not to include any persons except "laborers" and "workmen". It may be observed further, that after the New Jersey decisions above cited were rendered under the statute in force in 1894, the legislature of that state in 1896 amended the act by providing: "All persons doing labor or service of whatever character in the regular employ of such corporation", shall have lien, etc. Thereafter the decisions of that state are to the effect that one who works for a corporation though he may be director or stockholder is entitled to his lien. *Consolidated Coal Co.* v. *Keystone Chem. Co.,* 54 N. J. Eq. 309; 35 Atl. 157; *Buvinger* v. *Union Printing Co.,* 65 Atl. 482, decided in 1907. In this last case it was held that a general manager, who was also a stockholder, director and a member of the board of directors, was entitled to preference for his wages under the statute. The court affirmed a suggestion in a former decision, *Campbell* v. *Taylor,* 64 N. J. Eq. 622, 56 Atl. 1132, that this amendment was probably made for the purpose of preventing a general exodus of workmen employed in anticipation of the failure of the company. Judge Learning said: "I am impressed that in this

suggestion is to be found the true purpose and underlying spirit of the act. While the duties of the present claimant (a general manager) may not have involved the degree of manual labor which ordinarily falls to a bookkeeper, yet I think it clear that he is included in the spirit and purpose of the legislation." Then, after quoting the words of the act as above set out, he continues: "If the recognized purpose of the statute be the preservation of the organized force of a corporation in a time of embarrassment, this language must be held to include the general manager, even though he be a director and therefore a member of the board which employed him. His retention as the immediate supervisor and organizer of the operative force of employees is peculiarly essential to the accomplishment of the purpose of the act. Let his claim be allowed." This complete change in the decisions of the New Jersey Court accentuates the statement hereinbefore made that the decisions of the courts are influenced by the particular statute applicable to each case. Our case of *Kimball* v. *Sundstrom & Stratton Co.,* 80 W. Va. 522, does not hold that a stockholder or director employed by the company is not entitled to preference for his work. That question was not involved. JUDGE MILLER was simply stating that the claimant there was neither stockholder or director, and it cannot be inferred that the claimant would have been denied his right of lien had he been such stockholder or director.

The wide and comprehensive scope of the act clearly includes the services of a general manager who performs services as in this record set out; and there is no sound reason shown in this case why Mendel should be barred from a lien for his labor because he was a stockholder, director and officer of the corporation which employed him.

The decree dismissing appellant's petition will be reversed, the petition reinstated and the cause remanded.

*Reversed and remanded.*