RALEIGH COUNTY CONSTRUCTION COMPANY *v.* AMERE GAS
UTILITIES COMPANY *et al.*

*and*

SAYRE & BOWERS *v.* AMERE GAS UTILITIES COMPANY

(Nos. 6919, 6919-A)

Submitted March 10, 1931.   Decided March 17, 1931.
(Rehearing denied April 27, 1931.)

*J. Q. Hutchinson, D. D. Ashworth* and *Ben H. Ashworth,* for appellants.

*J. W. Maxwell,* for appellee Amere Gas Utilities Company.

WOODS, JUDGE:

The Raleigh County Construction Company filed a bill in the circuit court of Raleigh county against Amere Gas Utilities Company for the purpose of enforcing a laborer's lien under sections 19 and 20 of chapter 75, Code 1923. Shortly thereafter Floyd M. Sayre and Douglas Bowers, attorneys, filed their petition in said suit, seeking to enforce a lien under the same statute for labor performed. The defendant filed separate demurrers and answers to the bill and the petition. The chancellor sustained the demurrers on the ground that the notices in each case were insufficient. The parties claiming liens appealed.

From an examination of the notices of liens, it appears that the form prescribed in section 3 of chapter 75, Code, for use by a general contractor was followed in both instances. The substance of each notice is that the party upon whose behalf the same was given "claims a lien" to secure the payment of a specified sum of money for labor and work performed for the defendant company; that at the time said work and labor was performed, the defendant was doing business in the state; that the work and labor was performed by virtue of a contract with defendant; and that a lien is claimed upon all the real estate and personal property of the defendant. The jurat follows the form in section 3 "that the statement contained in the foregoing notice of liens are true, as he verily believes." The chancellor held that the notices did not meet the requirements of sections 19 and 20. He took the position that the expression "claims a lien" was not sufficient—that the statement should be to the effect that he had a lien; that the work and labor performed must in some manner be identified in the notice—in other words, that the notice imports a legal instrumentality by which knowledge is conveyed to persons interested.

The mechanic's lien was unknown at common law. It is

a creature of statute. The right given to enforce it in a court of equity carries with it all the rights incident to that court's principles and rules and its method of procedure. *Blowpipe Co.* v. *Spencer,* 40 W. Va. 698. In this state it was at first held that a strict compliance with, and construction of, the statute was necessary. *Mayes* v. *Ruffners,* 8 W. Va. 384. It is now held that the statute must be given a fair and liberal construction as to the creation of the lien and its enforcement. *Bailey Lumber Co.* v. *General Construction Co.,* 101 W. Va. 567; *Georgia Lumber Co.* v. *Harrison Construction Co.,* 103 W. Va. 1. We are of opinion that the notices were sufficient under the statute. This conclusion makes it necessary to pass upon the other questions raised by the demurrer, namely, the right of Sayre and Bowers to a lien, and the constitutionality of the statute.

Objection is raised to the claim of Sayre and Bowers on the ground that the statute (section 19) does not purport to secure attorneys, but only laborers and workmen. In their petition they set up the fact that they were hired to obtain franchises, make abstracts, and obtain rights of way for defendant company, and filed therewith an itemized statement of the work actually performed, with charges therefor, together with items for postage, filing fees, telephone calls, etc., all of which inured to the benefit of the defendant.

The case of *Shore* v. *United States Auto Supply Co.,* 107 W. Va. 66, holds that under section 19 the general manager of a corporation is entitled to a lien, properly preserved, for his labor as such under a contract with the corporation, express or implied. And the fact that he is a stockholder, director and officer of the company will not bar him of his lien, there being no fraud or undue advantage to others, suggested or attempted to be shown. The court in that case took the position that the general manager was included under the words "or other person" in the statute. The work performed by Sayre and Bowers might have been performed by others not licensed attorneys. It is not an uncommon practice for corporations to employ field men to obtain rights of way; abstractors to search the records; etc. In such case they would come within the statute. Should the fact that the

employees here happened to be lawyers, militate against them in securing a lien for labor and work performed in behalf of the company? The type of work performed here, as we see it, differs materially from what would be classed as purely professional services. The objection to a lien for professional services rendered by an attorney is based on the premise that it might permit undue advantage to be given to the professional man to the disadvantage of others; that the reasonableness of such services depend largely upon the value the attorney himself places upon his services. In the particular case, however, the reasonableness of the fee for work is more readily ascertainable, because it is a type of work that a non-professional or salaried man might perform. In the particular case, we see nothing to interfere with Sayre and Bower's claim for a lien. Whether or not an attorney, as such, has a lien for services, of a purely professional nature, is left for future consideration.

This brings us to the third ground of demurrer, the unconstitutionality of the statute. Counsel for the defendant, in an exceptionally able argument, contends that the statute makes an arbitrary distinction between natural and artificial persons engaged in the same business, and therefore amounts to a denial of equal protection of the laws within the meaning of the fourteenth amendment of the federal constitution. The constitutionality of labor liens generally is not denied.

We have held that state legislation does not constitute a denial of the equal protection of the laws so long as all persons subject to it are treated alike under similar circumstances and conditions in respect to both the privileges conferred and the liabilities imposed. *Coal & Coke Ry. Co.* v. *Conley*, 67 W. Va. 129. To like effect see note in Cooley's Const. Lim. (7th Ed.), p. 19, citing *Missouri* v. *Lewis*, 101 U. S. 22, and *Kentucky Railroad Tax Cases*, 115 U. S. 321. Differences due to voluntary action and diverse individual choices constantly arise under equal laws. The legislature has a wide discretion in selecting subjects for regulation and in making the classification of subjects for legislative purposes. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61. Corporations are individual bodies created by the state, upon whom special

favors of limited liability are conferred. It cannot be successfully contended that the state may not prescribe the liabilities under which corporations created by its laws shall conduct their business in the future, when no limitation is placed upon its power in this respect by their charters. *Missouri P. R. Co.* v. *Mackey*, 127 U. S. 208. So, the sufficiency of the reason for classification is not a question for judicial discretion but one of legislative discretion. Any and all classifications mean discrimination *ex necessitate*. Apparent hardship and discrimination do not, therefore, work denial of equal protection of the laws. The very fact that corporations get their privileges from the state gives the right to the state to dictate the terms on which they may transact their business. This right, of course, does not apply to individuals. *Pacific Exp. Co.* v. *Seibert*, 142 U. S. 352. Again the corporation being also the creature of legislative enactment the legislature can pass many laws and restrictions on its management and control which it would not be proper to enact as to the conduct of individuals. The most careful scrutiny of our statute concerning liens, under consideration here, does not show that the legislature had any other purpose or design than to embrace all corporations. No particular class or classes of corporations can by the most violent presumption be held to have been intended by the legislature to have been included in the act, and all others to be exempted from its operations. The same rules govern the interpretation of statutes which govern the interpretation of contracts or other written instruments. The rule is well expressed in Cooley's Const. Lim., p. 86: "Where a law is plain and unambiguous whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed and, consequently, no room is left for construction. Possible, or even probable, meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere. Whether we are considering an agreement between parties, a statute, or constitution, with a view to its interpretation, the thing which we are to seek is the thought which it expresses." So we have held that courts will never impute to the legislature

intent to contravene the constitution of either the state or the United States, by construing a statute so as to make it unconstitutional, if such construction can be avoided, consistently with law, in giving effect to the statute; and this can always be done, if the purpose of the act is not beyond legislative power in whole or in part, and there is no language in it expressive of specific intent. *Coal & Coke Ry. Co.* v. *Conley, supra.*

Another point urged is that the statute in question violates sections 10 and 13 of Article III of the State Constitution. The aforesaid sections refer to a denial of a trial by jury. As pointed out by counsel for defendant, this particular statute was enacted since the adoption of our Constitution. While this is true, the mechanics lien law proper, has been in effect since the formation of the State and prior to the present constitution. In *Davis* v. *Settle,* 43 W. Va. 17, we held that the constitutional right to a trial by a jury does not relate to suits over which equity exercised a jurisdiction when the constitution was adopted. Logically it would seem such construction would apply to all proper amendments to such law.

For the reasons aforesaid we reverse the action of the court in sustaining the demurrer and remand the cause for further proceedings according to the principles of equity applicable in such causes.

*Reversed and remanded.*