J. V. SULLIVAN *et al. v.* MADELEINE SMOKELESS COAL COMPANY *et al.*

(No. 7829)

Submitted April 24, 1934.   Decided May 29, 1934.

*Hubard & Bacon,* for appellant.

*Carl C. Sanders,* for J. S. Ellison, administrator, and others.

*W. H. McGinnis, Jr.,* for J. E. and J. C. Ward.

*J. E. Summerfield,* for Robertson and Foglesong.

*Lyman Toler* and *File, Goldsmith & Scherer,* for J. C. Sullivan, special receiver.

MAXWELL, JUDGE:

On this appeal there are involved questions of priorities of claims against certain funds of Madeleine Smokeless Coal Company, a corporation. Mullens Grocery Company is the appellant.

In July, 1932, the financial affairs of the Madeleine

Company having become badly involved, the circuit court of Raleigh County, at the instance of the plaintiffs, owners of more than one-fifth of the capital stock of said company, appointed J. C. Sullivan receiver of the properties and assets of said company. By the same decree, the receiver was authorized and directed to continue the said company's business of mining and shipping coal from its mining plant at Madeleine, said county. The decree contained the requirement that the receiver in conducting the operations of the company should not "create or incur any indebtedness over or in excess of the amount he may be able to obtain for coal mined and produced by him." Notwithstanding this precept, unfortunately, the receiver's operations resulted in a deficit of nearly $4,-500.00.

In January, 1933, the properties and assets of the Madeleine Company were sold by commissioners of the court for the sum of $4,500.00 cash, and the assumption by the purchaser of certain unpaid taxes. Upon confirming the sale, the court referred the cause to a commissioner in chancery to take, state and report an account showing (1) the properties and assets of the Madeleine Company at the time of the appointment of the special receiver; (2) settlement of the accounts of the special receiver; (3) remaining assets of the Madeleine Company; (4) debts and claims owing by the said company; (5) liens; (6) real estate, if any, owned by the company; (7) other pertinent matters. Of the many matters included in the commissioner's report, only a few are here involved.

By his report, the commissioner divided the Madeleine Company's assets into three schedules, thus summarized: First Schedule: The cash and accounts receivable turned over to the receiver at the time of his appointment, $1,-108.85. Second Schedule: All the property coming into the hands of the Special Receiver not including the first schedule between the date of his appointment July 21, 1932, and the date of his discharge February 8, 1933, $12,577.01. Third Schedule: The proceeds of the sale of the coal mining plant consisting of tipple, office build-

ing, dwelling houses, stock of merchandise and the usual mining equipment, $4,500.00. This method of disuniting the assets was approved by the court. On that background, liens and claims against the Madeleine Company and obligations of the receivership were adjudicated.

The appellant assigns the following points of error: (1) In giving to Robertson & Foglesong a preferred lien on receivership assets for $168.25. (2) In giving to John E. Ward a prior lien on receivership assets for labor performed before receivership in the amount of $266.91. (3) In giving to John C. Ward a prior lien on receivership assets for labor performed before receivership in the amount of $673.69. (4) In giving to J. C. Sullivan, receiver, a prior lien on receivership assets as compensation in the amount of $1516.66. (5) In giving to File, Goldsmith & Scherer a prior lien on receivership assets for services rendered the receiver in the sum of $500.00. (6) Since the receiver did not have sufficient funds to pay all creditors, the court erred in not requiring him to pay the creditors whose claims were of equal priority, pro rata.

The claim of Robertson & Foglesong was for mortuary services rendered to families of employees of the Madeleine Company. This claim was given preference on the basis of a finding by the commissioner that the company, prior to the receivership, maintained a burial fund to which regular monthly contributions were made by the employees, such contributions being deducted from their wages by the employer. The commissioner found that there was thus created a trust fund in the control of the company. That finding seems not to be challenged, but the position is taken that such fund lost its identity by being commingled with other funds of the company. In our judgment, there is not thus presented a loss of identification of trust funds within the meaning of the general rule which counsel invokes. The burial fund account was set up separately on the books of the company. The money representing the balance of said account did not belong to the company, nor did the general creditors have any right to assert their claims against the same. The mor-

tuary services were rendered on the basis of the existence of such fund, and in contemplation that payment would be made therefrom. In the recent case of *Ream's Drug Store* v. *Bank of the Monongahela Valley*, 115 W. Va. 66, 174 S. E. 788, wherein we considered that certain deposits in the defendant bank should be treated as a trust fund, we held: "A deposit impressed with the character of a trust fund does not lose that impression through commingling with the general funds of the bank." The same principle applies here. So we hold there was no error in respect of the Robertson & Foglesong claim.

The claims of John E. Ward and John C. Ward are next in order in the appellants' assignments of error. The former was payroll clerk and the latter bookkeeper for the Madeleine Company when the receiver was appointed. By statute, such employee of an incorporated company is entitled to a lien against the assets of the company for the value of his services. Code, 38-2-31. But the lien will be deemed discharged unless the claimant shall file notice thereof in the county clerk's office within ninety days from the time he ceased work. Code, 38-2-32. The statute is mandatory. These claimants did not file such notice. The fact of the institution of this suit did not interfere with their duty to record such notice. The purpose of the receivership was to preserve the assets of the debtor and to operate its mining plant pending the dissolution of the corporation. Creditors were not enjoined from perfecting liens. There was nothing in the situation to relieve these two claimants from the necessity of complying with the statutory requirement for the perfecting of an employee's lien. "Where the assets of a debtor are placed under the control of a receiver who is authorized merely to conserve and protect the said assets, and is not authorized to administer them, a judgment creditor of said debtor is not precluded by the fact of such receivership from perfecting an execution lien against the personal assets of said debtor." *Meyers* v. *Land Co.*, 107 W. Va. 632, 149 S. E. 819. We are therefore constrained to hold that these two claims are not

entitled to the priority which was given them by the commissioner and the court.

Under the next assignments of error, consideration must be given to the allowances to J. C. Sullivan for his services as receiver, and to File, Goldsmith & Scherer, attorneys for the receiver. It is urged that the receiver should be denied compensation because of his failure to comply with the court's precept against incurring receivership debts in excess of receipts. A condition or requirement of that sort must, of course, be considered on a relative basis. In the very nature of things, such requirement could not ordinarily be deemed absolute. The operation of any business or industrial enterprise necessarily involves some hazard. The court will take judicial notice of the fact that during the period of this receivership, economic conditions were at an extremely low ebb. There is no specification of lack of efficiency or good faith on the part of the receiver. We are of opinion, therefore, that it is proper that he should be compensated, and the amount thereof was primarily for the trial court. "The amount of compensation to be awarded by (to) the receiver and the manner of payment are largely discretionary with the court under whose authority he acts. * * * The court having his eye directly upon the receiver, and knowing * * * whether he was faithful and efficient in the performance of his duties, is in a better position to determine questions relating to compensation than is an appellate court." *Northrup Nat'l. Bk.* v. *Varner,* (Kan.) 109 Pac. 394. What status or priority should be given him? By the chancellor's decree, receivership court costs $252.38, receiver's compensation $1,516.66, and receiver's attorneys' fee $500.00, are made preferred liens upon the assets listed in schedule No. 2 before mentioned. Appellant contends that this is erroneous; that the receiver and his counsel should not be given preference over appellant and others who rendered services for or furnished materials or merchandise to the receiver on his orders. There is no absolute basis for the determination of a question such as here presented. In large measure each case must be determined by its own facts.    53

Corpus Juris, p. 184. But the extensive though not universal rule seems to be that in general situations such as at bar, the receiver and his counsel shall have preference over other claimants of the receivership funds. "Proper compensation of a receiver and of his attorney is preferred over claims for operating expenses incurred by him in the conduct and operation of a business, as are court costs." 53 Corpus Juris, p. 267. Consult *Campbell* v. *Nichols,* (Wash.) 261 Pac. 408; *Jeffers* v. *New Jersey & P. R. Co.,* (N. J.) 99 Atl. 189; *Bauer* v. *Wilkes-Barre Light Co.,* (Pa.) 117 Atl. 920; *Jackson Coal & Coke Co.* v. *Phillips Line,* (Va.) 75 S. E. 681; 2 Smith on Receivers, (2d Ed.), sec. 629; 1 Clark on Receivers, (2d Ed.), sec. 646 (a); Annotation, 24 A. L. R., p. 1174.

It is urged by appellant that the above mentioned attorneys should not be allowed a fee to be paid as part of the costs of the receivership because these same gentlemen were counsel for the debtor. Reference is made to our decision in *Hyre v. Johnson,* 107 W. Va. 524, 149 S. E. 385, wherein we said: "It is a general rule of equity practice that the attorney for the debtor should not be appointed attorney for the receiver. If such appointment is made, the attorney should ordinarily be compensated only for 'advising the receiver with reference to the routine details of his administration.' Tardy's Smith on Receivers, (2d Ed.), sec. 631." We further stated that the obvious reason for this general rule is that it would be "manifestly unfair to the other parties for the receiver to be guided by an attorney whose primary duty is to protect the interests of the debtor." That condition did not obtain in this case. There was no pending question of the debtor's rights which might conflict with the interests of the creditors, because the whole purpose of the proceeding was to wind up the affairs of the debtor for the benefit of its creditors. The defendants' answer makes this situation manifest. So, while we recognize the general rule above quoted we consider that there could have been no prejudice to the creditors herein by reason of the fact that counsel for the debtor became counsel for

122

the receiver. The amount of the allowance to counsel for their services to the receiver was not challenged.

Subject to the modification in respect of the Ward claims, we affirm the decree of the trial court.

*Modified and affirmed.*