JAMES G. CHARTER *v.* DODDRIDGE COUNTY BANK

(No. 8426)

Submitted September 22, 1936. Decided October 6, 1936.

*J. E. Law* and *George W. Bland,* for appellant.
*John S. Stump, Jr.,* for appellees:

KENNA, JUDGE:

From a decree of the Circuit Court of Doddridge County sustaining a demurrer to his bill of complaint, James G. Charter prosecutes this appeal.

From the bill and its accompanying exhibits, it appears that the plaintiff was elected president of the Doddridge County Bank on the 4th day of January, 1930, and that from that day he acted as president and also devoted his full time to the active management of the bank in the capacity of cashier until the 8th day of July, 1933, when he resigned both positions, and the bond given by him was released from further liability. It appears from the minutes of the directors' meeting of July 8, 1933, that the bank was in financial difficulties at this time, that it was rediscounting heavily and that new deposits subsequent to July 3, 1933, were to be treated

as trust funds. It further appears that at a meeting of the board of directors held on the 15th day of July, 1933, the board passed a resolution reciting the services of the plaintiff as president and cashier of the bank from January, 1930, until July 8, 1933, and the fact that during that period he gave his entire time to the active management of of the bank and proceeded to award him a salary equivalent to $200.00 a month for forty-two months, with interest upon the full amount until paid, "said salary being the same as that allowed for these positions for many years past." The bill alleges that no part of this sum has been paid, nor has any interest been paid thereon in accordance with the resolution of the board of directors, and that as of December 18, 1935, the principal sum, together with interest, amounted to $10,479.00; that on the 13th day of January, 1934, plaintiff filed his claim with the defendant, E. A. Rinehart, receiver of the Doddridge County Bank and that it was then disallowed by Rinehart, either as an unsecured claim or as a preferred claim. The bill alleges the appointment of E. A. Rinehart as receiver of the bank on July ____, 1933. The prayer of the bill is that the claim may be established as a valid claim and decreed to be a lien against all of the property and assets of the Doddridge County Bank on the 8th day of July, 1933, and for general relief.

The points urged by the appellees against reversing the decree which sustained the demurrer to the plaintiff's bill depend upon four propositions: (1) that the bill of complaint is insufficient as a bill to assert a lien; (2) that the plaintiff's claim, being based upon services rendered to the bank as its executive officer, either as president or as cashier, is invalid because such services are not compensable unless made so in advance by the action of the stockholders of the corporation; (3) that the statute providing for liens against the properties of corporations for those performing services for them should be restricted to those doing manual work; and (4) that in the event all the foregoing points should be decided against the position of appellees, still, under Code, 38-2-32, plaintiff has no lien because the bill of complaint shows that

he ceased to work for the corporation on July 8, 1933, and fails to show that he filed a notice of lien as required by statute within ninety day from that date.

We see no merit in the first proposition advanced by the appellees as ground of demurrer to the bill of complaint. Under the facts alleged there is no adequate remedy at law, the plaintiff's bill seeking, not merely a recovery, but in addition asserting that under the facts alleged he is entitled to a preferential lien, denied by the receiver, to secure the amount owed him. The question whether the alleged facts actually entitle the plaintiff to a statutory lien is not involved on this point, the question now being merely whether equity is a proper tribunal to give him a hearing on the subject matter. We think that it clearly is.

Under the second point, the appellees stress the fact that the plaintiff below served as president of the bank from his election to that office in January, 1930, to the time of his resignation on July 8, 1933, and that the settled law of this state is to the effect that the president of a corporation, in order to be entitled to draw compensation as such, must be employed in advance by the stockholders under an understanding to pay for his services, and that otherwise, the fixed presumption is that his services were not intended to be compensated. This undoubtedly is the law in this state, but it appears from the bill of complaint that the plaintiff was employed also as cashier of the Doddridge County Bank and devoted his entire time to the bank's affairs. The appellees argue that the rule applicable to the president of a bank would apply as well to the cashier and since there was no advance authorization of remuneration for the plaintiff's services either as president or cashier, he cannot now claim compensation. With this contention, we cannot agree. The case of *Shore* v. *United Auto Supply Co.*, 107 W. Va. 66, 146 S. E. 890, is authority for the proposition that the services of a general manager of a corporation are lienable under this statute, and further, for the holding that merely because the general manager happened also

to be a director and stockholder of the corporation and his services as director would not be lienable, that fact does not prevent his claiming a lien for his services in the capacity of general manager. It would seem from our examination of the cases that the rule in question is applicable to the usual and ordinary officers of all corporations, that is to say, the president, vice-president, secretary, treasurer and directors, and that if any of these officers are to be compensated for their services to the corporation as such, there must be a contractual understanding in advance of the performance of the services. Otherwise, they are not to be compensated. This seems to be so regardless of the extent of the services that they perform *as such officers*. We think that there is a close analogy in the nature of the services to be performed by the general manager of an ordinary corporation to those of a cashier of a bank. At all events, we see no basis upon which a valid distinction between the two in this connection can be drawn. The appellee urges that the amount voted was allowed as compensation for "these positions" and therefore that the amount allowed as cashier cannot be separated from the amount that must have been allowed as president, and therefore, that neither amount is lienable. We cannot agree with this contention because the rule invoked rests upon the fact that ordinarily the officers of private corporations perform only slight and perfunctory services. The cashier of a bank, on the other hand, is not such an officer and usually devotes his entire time to the affairs of the bank. We are therefore of the opinion that the only fair construction to place upon the allegations of the bill is that the compensation is attributable to the position in which the plaintiff performed compensable services, and not to the position in which he may have performed nominal duties not compensable.

Under this same heading, it is urged that from the bill and exhibits it is apparent that the order of the directors of the bank entered on the 8th day of July, 1933, was entered when the bank was actually insolvent and

hence it cannot operate as a basis for the plaintiff's claim or for the lien he seeks. We do not think it is necessary that it should so operate in order to entitle the plaintiff to a recovery, because of the fact that the lien in question may rest upon either express or implied contract. In fact, the lien created by the statute is for "the value of the services" and by implication, perhaps, is more nearly adapted to the nature of an implied contract than of an express contract. This construction of the statute is settled by the case of *Shore* v. *United Auto Supply Co.,* 107 W. Va. 66, 146 S. E. 890.

The law is settled in this state as to the third point relied upon to sustain the demurrer to the plaintiff's bill, namely, that the statute is not intended to secure by the lien it confers the value of services of the nature here involved, but that its terms should be restricted to manual work done for corporations. The terms of the statute are extremely broad, covering every workman, laborer or other person performing any work for an incorporated company by virtue of a direct contract or a contract with the general contractor or sub-contractor of such incorporated company. The statute is remedial. This court has heretofore given it a liberal construction that prevents us from adopting the views urged on this point by the appellees. *Shore* v. *United Auto Supply Co.,* 107 W. Va. 66, 146 S. E. 890, where cases construing statutes similar to our own in other jurisdictions are reviewed.

We are of the opinion that the trial court correctly sustained the fourth point of the demurrer of the defendants below based upon the failure of the plaintiff below to allege that he had filed a notice of lien under Code, 38-2-32, within ninety days from the time that he ceased to work July 8, 1933. The statute imposes the absolute duty to file this notice in order to prevent the lien from being discharged, and unless the appointment of a receiver for the bank by the Commissioner of Banking under Code, 31-8-32, within the period during which the plaintiff below could have filed his notice of lien, operates to excuse him from doing so, there is no doubt

but that his lien, by the very terms of the statute itself, has been discharged. The contention of the appellant is that under the rule followed in *West Virginia Utilities Co.* v. *Dura Glass Mfg. Co.*, 99 W. Va. 193, 128 S. E. 86, and other West Virginia cases, the appointment of a receiver for the purpose of winding up the affairs of a corporation and administering its assets operates to prevent creditors from securing preferences or perfecting liens after the appointment of the receiver, and hence, because the law would not require a vain thing to be done, relieves them of the duty to do so. A receivership for a more restricted purpose does not so operate. *Meyers* v. *Washington Heights Land Co.*, 107 W. Va. 632, 149 S. E. 819; *Sullivan* v. *Madeleine Smokeless Coal Co.*, 115 W. Va. 115, 175 S. E. 521. It will be observed, however, that by the terms of Code, 38-2-31, a lien for the value of work done is actually created without regard to notice, and that the filing provided for in Code, 38-2-32, simply prevents the lien from being discharged. Query: Since the filing required by Code, 38-2-32, does not operate in any way to improve the status of the lienor, may it not be done after the appointment of a receiver in any case, and if so, does the appointment of a receiver in any case excuse it? These questions are not decided.

It will be observed that the West Virginia cases relied upon by the appellant are cases in which receivers were appointed in judicial proceedings. Here, we are not concerned with that sort of a receivership. The case of *Alleman* v. *Sayre,* 79 W. Va. 763, 91 S. E. 805, L. R. A. 1917D, 1002, deals with the sort of receivership that we are concerned with here and carefully distinguishes it from judicial receiverships of all sorts. That case is authority for the proposition that the receiver of a bank appointed pursuant to statute by the Commissioner of Banking may be sued without the authority of the appointing officer and, *a fortiori,* without permission of any court. This being so, it must be concluded by direct analogy that if such a receiver may be sued and judgments entered and executions issued against him,

there is nothing that would prevent the filing of a notice of lien under Code, 38-2-32. If there is nothing to prevent that being done, then the plaintiff below, under the mandatory terms of the statute, was obliged to do it in order to prevent the discharge of his lien, and his bill of complaint should have averred the filing of the notice of lien.

Inasmuch as the allegations of the bill of complaint seeking to establish a lien are held to be insufficient, and since they are the sole ground of equitable jurisdiction, with them stricken from the bill it stands as a bare demand for the enforcement of a legal claim. We are therefore of the opinion that it was properly dismissed, of course, without affecting the right of the plaintiff to assert whatever claim he may have by an action at law or otherwise.

*Affirmed.*