**Irving SULMEYER, Trustee in Bankruptcy, etc., Appellant,**

v.

**SOUTHERN CALIFORNIA PIPE TRADES TRUST FUND,**
Appellee.

No. 17468.

United States Court of Appeals
Ninth Circuit.

April 11, 1962.

Quittner, Stutman & Treister by George M. Treister, Los Angeles, Cal., for appellant.

Brundage, Hackler & Flaum, Richard W. Petherbridge, Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

This is a petition for leave to appeal from a judgment of the United States District Court reversing an order entered by the referee in bankruptcy. The district court had jurisdiction to review the referee's order under the provisions of Section 67, sub. c of Title 11 United States Code Annotated. This court has discretion to review the judgment entered by the district court under the provisions of Section 47, sub. a of Title 11 United States Code Annotated.

Respondent filed a claim in the proceedings below asserting a priority under Section 64, sub. a(2) of the Bankruptcy Act (hereinafter referred to as the "Act"). Petitioner (trustee in bankruptcy) conceded respondent's claim to be allowable as a general claim, but objected to its allowance on a priority basis. At the hearing on petitioner's objection, respondent's claim was admitted to be valid as to $335.50. The referee, by order dated April 25, 1961, sustained petitioner's objection, allowing the respondent's original claim of $529.15 as a general claim only.

Respondent petitioned the district court for a review of the referee's order. On June 20, 1961 the district court reversed the referee's order, and held respondent's claim to the extent of $335.50 to be a priority wage claim within the meaning of Section 64, sub. a(2) of the Act. It is from this judgment of the district court that petitioner prays, and is granted, leave to appeal.

The issues presented in this appeal arose from a collective bargaining agreement in effect between a contractor's association, of which the bankrupt was a member, and a union. Under the agreement, the bankrupt was required to pay monthly seven and one-half per cent of the gross pay of each employee to the Vacation and Holiday Benefit Fund (hereinafter referred to as the "Fund" or "respondent's Fund") administered by respondent.

Respondent's Fund is a trust administered jointly by representatives of the contractor's association and the union. Contractor-employers "make all legal payroll withholdings for income tax, social security, unemployment insurance, and any other withholdings required by an employer to be made from the total wages, including the Vacation and Holiday contributions," before transmitting the Vacation and Holiday contribution to the Fund. (See § 9.1 of the Trust Instrument.)

All sums thus received by the trustees are deposited first in a trust account with the trustees having the sole power to make withdrawals. The trustees then, as required by the trust instrument, establish a savings account in the name of each employee, using the employee's social security number as the number of the account. No deposit book is furnished to the employee-beneficiary. (See § 4.6 of Trust Instrument.)

In the event the trust should be terminated, no part of the Fund is to be used for or diverted to purposes other than to pay the employees who are beneficiaries of the Fund, or the administrative expenses of the Fund. (See § 12.3 of Trust Instrument.) The trust instrument also provides: "[C]ontributions by employers to this fund shall convey fully vested and nonforfeitable interest into separate and independently controlled trusts for each employee-beneficiary." (See § 10.1 of Trust Instrument.)

Employees are permitted to make two withdrawals from their individual accounts each year: one representing holiday payments, and one representing vacation payments. The first, holiday payments, can be withdrawn by filing with respondent for transmittal to the bank a "Request for Holiday Payment Form"; this form must be filed fifteen

days prior to December 1st and the amount of the withdrawal is determined by a formula which results in a payment of approximately thirty per cent of the amount on deposit in the employee's account. The second, vacation payments, can be withdrawn by filing an "Application for Vacation" form with respondent; the employee is generally to file the form fifteen days in advance of the commencement of his vacation period and the amount of the withdrawal is the balance of the amount on deposit as of the preceding December 31st, or seventy per cent of the preceding year's accrual.

The district court by reversing the referee's order, granted respondent the sum of $335.50 (which was owing to the Fund by the bankrupt and accruing within three months preceding the commencement of the bankruptcy proceedings) priority as "wages due to workmen" within the meaning of Section, 64, sub. a(2) of the Act.[1]

The instant appeal presents but one question: Are employer "contributions" to respondent's Fund entitled to priority as "wages due to workmen" within the meaning of Section 64, sub. a(2) of the Act?

Petitioner[2] contends respondent's claim is not entitled to priority treatment since the bankrupt's obligation was not a wage debt due to his employees. Petitioner argues, as he did before the referee (who accepted his view) and before the district court (which did not accept his view). We believe the district court was correct; and its judgment is affirmed.

In support of his contention, petitioner relies on two cases: United States v. Embassy Restaurant, Inc., 1959, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601, and Los Angeles Hotel-Restaurant Employer-Union Welfare Fund v. Bowie, 9 Cir., 1960,

283 F.2d 516, certiorari denied, 365 U.S. 817, 81 S.Ct. 699, 5 L.Ed.2d 696.

In answering petitioner's contention, grounded on the Embassy case, supra, the district court said:

"[There] the Supreme Court held that contributions to be paid to a union welfare fund did not constitute 'wages * * * due to workmen,' within the meaning of § 64 (a) (2) * * *, but the ratio decidendi of the decision was the nature of the contributions involved, the Court stating, inter alia: 'They are flat sums of $8 per month for each workman. The amount is without relation to his hours, wages or productivity. It is due the trustees, not the workman, and the latter has no legal interest in it whatsoever. A workman cannot even compel payment by a defaulting employer. Moreover it does not appear that the parties to the collective agreement considered these welfare payments as wages. The contract here refers to them as "contributions". Finally, Embassy's obligation is to contribute sums to the trustees, not to its workmen; it is enforceable only by the trustees who enjoy not only the sole title, but the exclusive management of the funds.' [359 U.S. at 32–33, 79 S.Ct. 556.]

"(3) in the case at bar, on the other hand, no flat sum is involved, but rather a percentage of the employees' wages, and the amount varies directly according to wage rate and hours worked; and although the trustees do have certain supervisory powers over the trust funds, each employee has vested rights therein, with only the time of actual enjoyment being postponed until immediately before the Christ-

1. Section 64, sub. a of the Act (11 U.S. C.A. § 104, sub. a) reads, in pertinent part, as follows:
"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall

be * * * (2) wages * * * due to workmen * * *."

2. Hereinafter for convenience the parties shall continue to be referred to as "petitioner" and "respondent" rather than as "appellant" and "appellee", their respective positions.

mas holiday season and before the employee's vacation period; and, moreover, payments are made to the trust funds only after withholding therefrom the employee's personal income tax, social security and unemployment compensation deductions;

"(4) accordingly the claim in the present case, being one for vacation and holiday pay already earned by the employees, is entitled to priority under § 64(a) (2) * * * [citations]." (R. 17–19.)

But, contends petitioner, the district court's attempted distinction has already been rejected in the Bowie case, supra. The Bowie case, however, is merely a *per curiam* decision of this court which reads:

"The judgment of the district court, affirming the order of the Referee denying priority as 'wages due to workmen' of the claim of appellant * * * is affirmed. United States v. Embassy Restaurant, Inc. [supra]."

Hence, all that can be said from a reading of this court's Bowie decision is that in it the contributions made to the fund could not be distinguished from those made in the Embassy case. It must be assumed the facts in both cases were the same, or substantially similar.[3]

Under the facts of this case, the district court's distinction of the instant case from United States v. Embassy Restaurant, Inc., supra, appears well founded in fact and law. The contribu-

tions made by the bankrupt were based upon a percentage of each employee's wages. The employee's personal income tax, social security and unemployment compensation contributions were withheld; such deductions are indicia of wages. The only purpose of respondent's fund was to provide the employees with the vacation and holiday pay which they had earned, and which they, or their heirs, were certain to get. (Exhibit B, Addendum, § 2(c) and §§ 3(g) and 3 (h).) It was not to provide benefits, such as are to be found in the Embassy case, which might or might not be obtained by the wage earner.

That vacation pay [4] is "wages" within the meaning of Section 64, sub. a(2) when earned or accrued during the three months preceding bankruptcy proceedings seems settled. United States v. Munro-Van Helms Co., 5 Cir., 1957, 243 F.2d 10; Division of Labor Law Enforcement v. Sampsell, 9 Cir. 1949, 172 F.2d 400; Kavanas v. Mead, 4 Cir. 1948, 171 F.2d 195, 6 A.L.R.2d 645. The district court's holding that respondent's claims were for vacation and holiday pay already earned and entitled to priority under Section 64, sub. a(2) of the Act does not appear clearly erroneous. The facts of this case bring it into closer alignment to the "assigned wage claim" cases than to Embassy Restaurant, supra. Shropshire, Woodliff & Co. v. Bush, 1901, 204 U.S. 186, 27 S.Ct. 178, 51 L.Ed. 436; Bass v. Shutan, 9 Cir. 1958, 259 F.2d 561; In re Otto, S.D.Cal.1956, 146 F.Supp. 786.

We therefore *affirm* the judgment below.

---

3. Petitioner, who either was a party in the Bowie case or who argues from the briefs there submitted, urges that the district court's distinction was rejected in Bowie because there the contributions were based on eight cents per hour worked by each employee and, consequently, bore a direct relationship to the employee's wages, hours and productivity. That the contributions in Bowie were controlled by the Embassy decision is apparent; eight cents an hour is a flat rate contribution remarkably similar to the $8 per month per full-time employee contributed

in the Embassy case. Here, however, the contributions were seven and one-half per cent of the gross pay of each employee, which is not a flat rate in the same sense used in Embassy and, presumably, in Bowie. To the contrary, the amount here contributed bears a direct relationship to the wages earned, varying with each employee's productivity and/or responsibility.

4. The parties do not suggest a difference between "vacation" and "holiday" pay. We assume they are one and the same.