CAROLINA LUMBER COMPANY, *a corp.*

*v.*

J. FRED CUNNINGHAM, *et al., etc.,*
PETER RAMELLA *and* LEON RAMELLA

(No. 13054)

Submitted September 26, 1972. Decided November 28, 1972.

*Marshall & St. Clair, James W. St. Clair,* for appellant.

*Carney M. Layne,* for appellee Wetherall Concrete.

BERRY, JUDGE:

The appellants, Carolina Lumber Company, a building supply company, and Peter Ramella and Leon Ramella, bricklayers, appeal from an order of the Circuit Court of Cabell County on May 4, 1970 which denied the appellants' exceptions to the report of a special commissioner appointed by the court to determine the priorities of liens against a certain tract of land owned by J. Fred Cunningham and which entered judgment adopting the findings of the report in toto with regard to the priorities of the liens.

The appellants contend that their mechanics' liens on the property as a result of furnishing materials and performing labor during the construction of a six unit apartment building should have equal priority under Code, 38-2-18, with the initial mechanic's lien that came into existence after the beginning of construction and thus their liens would be superior to a deed of trust on the property recorded subsequent to the initial perfected mechanic's lien but prior to the performing of the labor and furnishing of material giving rise to the appellants' liens.

The facts of the case are undisputed. J. Fred Cunningham acquired title to certain property in Huntington, Cabell County, West Virginia, by deed from William and Anna Brown dated January 7, 1969 and recorded in the office of the Clerk of the County Court of Cabell County, West Virginia, on January 31, 1969.

On February 3, 1969 J. Fred Cunningham and his wife executed and delivered to the Valley National Bank of Huntington, West Virginia, two promissory notes totaling $25,000 secured by deeds of trust on the property. The first trust deed securing the note in the amount of $10,000 was recorded on February 3, 1969. The second trust deed securing the note for $15,000 was recorded on February 7, 1969 in the Clerk's office. A credit for payment on the

second note of $8,900 was allowed, leaving the amount of $6,100 due on the note and secured by the second deed of trust.

On April 12, 1969 Mr. Cunningham began erecting a six unit apartment building on the real estate. Pursuant to an oral contract, Delbert Mathes began certain plumbing work on the property on April 12, 1969.

Subsequent to the labor performed by the plumber, Mathes, Mr. Cunningham delivered a third deed of trust covering the premises to John Meredith. The deed of trust dated May 12, 1969 was executed to secure a $25,000 promissory note and was recorded May 13, 1969.

On May 21, 1969 Ernest R. Mays commenced performance of certain labors on the apartment complex pursuant to an oral contract with J. Fred Cunningham. Wetherall Concrete, Inc. began furnishing materials on May 29, 1969. J. Fred Cunningham then executed and delivered to the Universal Auto Credit Corporation a promissory note for $43,215. A deed of trust on the real estate, dated May 26, 1969 was recorded on June 5, 1969 to secure Mr. Cunningham's note to Universal.

Pursuant to an oral contract with Mr. Cunningham, Pete Ramella and Leon Ramella started work on the building on June 9, 1969. On June 23, 1969 Carolina Lumber Company delivered material to the building site at the request of Mr. Cunningham.

Mr. Cunningham, in attempting to dispose of the property, approached the officers of the Valley National Bank of Huntington to assist potential buyers in obtaining financing. He agreed to assign $5,000 of the proceeds from the sale to the bank as payment for a prior unsecured debt he had with the bank. This assignment was effected on July 25, 1969.

In August, 1969 David Williams began to furnish labor to Mr. Cunningham for use in the apartment complex and on August 21, 1969 Perry and Derrick Company began to furnish materials for the project. On October 1, 1969

Donald Adkins commenced working and supplying materials to the building.

David Williams obtained a judgment on January 2, 1970 against J. Fred Cunningham for $800. This judgment was subsequently recorded so as to constitute a valid lien against the property. Liens for all of the previously mentioned work performed and materials supplied were properly perfected by the various parties.

The appellants, Carolina Lumber Company and Peter and Leon Ramella, instituted this civil action to preserve and enforce their perfected mechanics' liens pursuant to Code, 38-2-34. On January 21, 1970, January 28, 1970, February 7, 1970 and February 10, 1970 hearings were held before a special commissioner to determine the nature, amount, and priorities of any or all liens attached to the real property. The commissioner found that the liens of the Valley National Bank of Huntington, resulting from their two deeds of trust, had the first and second priority, followed in order of priority by the lien of Delbert Mathes and the deed of trust given in favor of John Meredith.

The commissioner held that both Ernest R. Mays and Wetherall Concrete, Inc. had valid liens, without priority between themselves, but of less priority than John Meredith's deed of trust. Universal Auto Credit Corporation's lien was determined inferior to all of the aforementioned liens but superior to the mechanics' liens of Pete and Leon Ramella and Carolina Lumber Company, which were of equal dignity between themselves.

The commissioner found that the assignment to the Valley National Bank of Huntington constituted a valid lien on the property which was subservient to the previously mentioned liens, but which was prior to all liens hereinafter described.

The mechanics' liens of David Williams, Perry and Derrick Company and Donald Adkins were valid and without priority among themselves, but they were

determined to be inferior to the voluntary assignment in favor of Valley National Bank. In priority, the final lien on the property owned by Mr. Cunningham was the judgment lien held by David Williams. The commissioner found that these claims totaled $85,676.06.

These findings were adopted in toto by the Circuit Court of Cabell County over the exceptions filed by Pete Ramella and Leon Ramella and by the Carolina Lumber Company. The court further appointed special commissioners to arrange for the sale and transfer of the property involved in this action.

The property was sold for $49,000 by the special commissioners at public auction. The proceeds of the sale have been placed in a savings account pending the outcome of this appeal.

The appellants contend that the receipts from the sale will satisfy only the liens of the Valley National Bank, Delbert Mathes, and John Meredith and that no other materialmen or laborers will be paid under the decision of the Circuit Court of Cabell County.

The question presented in this case is the priority of perfected mechanics' liens in relation to other liens recorded against the property. The answer to the question involves the construction of the mechanics' liens statutes, which appear to be contradictory in some respects. The specific statutes involved are Code, 38-2-16, 38-2-17 and 38-2-18, which must be read in pari materia and any ambiguous provisions in the statutes should be interpreted in such a manner as to avoid conflict and give effect to all of the provisions of the related sections of the statutes. See *Spencer v. Yerace*, 155 W.Va. 54, 180 S.E.2d 868; *State ex rel. Campbell v. Wood*, 151 W.Va. 807, 155 S.E.2d 893. The sections of the statute in question which are involved in the disposition of this case read as follows:

Code, 38-2-16.

"For the purposes of this article, all materials furnished and all work done by any one person,

firm or corporation, upon any one building or the improvements appurtenant thereto, shall be deemed and considered one contract, whether or not all of such material was bought at one time, or under one general agreement or otherwise, and whether or not all of such work and labor was contracted for at one time or otherwise."

Code, 38-2-17.

"All of the liens authorized and created by this article shall, except as provided in section thirty-one [§ 38-2-31] of this article, have priority over any and all other liens created by trust deed or otherwise, on such building or other structure and improvements appurtenant thereto and on the interest of the owner in the lot of ground whereon the same stands or to which the same may have been removed, subsequently to the time when such labor shall have begun to be performed, or such material or machinery or other necessary equipment shall have begun to be furnished."

Code, 38-2-18.

"Of the persons acquiring liens by virtue of this article, laborers, artisans, mechanics, workmen and furnishers of material, machinery and other necessary equipment, shall have first liens, and the lien of such persons, when perfected and preserved as required by this article, shall take precedence over any lien taken or to be taken by the contractor or subcontractor indebted to them for labor, material, machinery or other equipment, and the lien of a subcontractor shall take precedence over any lien taken or to be taken by a contractor indebted to him upon his subcontract, and every assignment or transfer by any such head contractor of his contract with the owner or by any such subcontractor of his contract with the contractor, or any proceeding in attachment or otherwise against such head contractor or subcontractor, with the purpose of encumbering or subjecting his interest in such contract, shall be subject and subordinate to the liens of all such subcontractors, laborers, workmen, artisans, materialmen and furnishers of machinery and other necessary equipment who shall perfect their liens according to the

provisions of this article. But all of such perfected liens of such laborers and workmen and of such materialmen and furnishers of machinery and of such contractors and subcontractors, respectively, shall be of equal dignity without priority among themselves, except as otherwise provided in this article."

Section 16 is clear and unambiguous. It provides that all materials furnished and all work performed by any one person, firm or corporation upon a building shall be considered one contract regardless of the time the materials were furnished or the work was done on the building. Section 17 provides that all of the liens created by Article 2 of Chapter 38, except as provided in Code, 38-2-31, as amended, shall have priority over all other liens created by deeds of trust or otherwise subsequent to the time labor shall have begun to be performed or such material shall have begun to be furnished. Section 18 provides that persons acquiring liens by virtue of furnishing material and performing work shall have first liens which take precedence over any liens obtained by the contractor or subcontractor and gives precedence to the subcontractor's lien over the lien of a contractor. The provisions of Section 17, except as to contractors, is ambiguous. The provision for mechanics' liens to have priority over liens created by deeds of trust, or otherwise, subsequent to the time when such labor shall have begun to be performed, or such material shall have begun to be furnished, is not clear as to whether it refers to the first point in time when the initial construction of the building was commenced or to the time the particular work was begun or the particular materials began to be furnished by the particular mechanic or materialman. The lien of a general contractor takes effect when work on the construction is commenced and continues until the entire construction is completed. Code, 38-2-16 and Code, 38-2-17. The provisions of Code, 38-2-18, are clear that the liens of laborers and materialmen are of equal dignity when they are properly perfected and preserved, which was done in each instance in this case. Moreover, this section

expressly gives laborers and materialmen a first lien taking precedence over a subcontractor's or a contractor's lien. The ambiguous provision of Code, 38-2-17 reading " * * * subsequently to the time when such labor shall have begun to be performed, or such material * * * shall have begun to be furnished" must be construed to mean subsequent to the time the initial construction was commenced.

The purpose of the mechanics' liens statutes is to protect any person who increases the value of another person's real property by furnishing labor or materials. These statutes are remedial, and, therefore, are to be liberally construed in order that they serve the purpose for which they have been enacted. 53 AM. JUR. 2d, *Mechanics' Liens,* § 6; *United States Blowpipe Co. v. Spencer,* 40 W.Va. 698, 21 S.E. 769; *Mazel v. Bain,* 272 Ala. 640, 133 So. 2d 44; *Wayne Building & Loan Co. v. Yarborough,* 11 Ohio St. 2d 195, 228 N.E.2d 841.

If the above construction is not placed on these sections of the mechanics' liens statutes the purpose of Section 18 would be defeated. Section 18 gives priority to laborers, mechanics and materialmen and provides that their liens shall take precedence over subcontractors' and contractors' liens. It is clear that a contractor's lien under Section 17 has priority over liens created by deeds of trust, or otherwise, and recorded, after the time the initial construction of the building is commenced. Thus, if a materialman's lien or a laborer's lien has preference over a contractor's lien under Section 18 and a contractor's lien has preference over a lien created by a deed of trust and recorded after the initial construction has commenced under Section 17, then it must necessarily follow that all mechanics' liens having equal dignity by statute will have preference over a deed of trust recorded subsequent to the time the initial construction was commenced.

It has been held by this Court that a mechanic's lien attaches when the work is begun under a contract and takes priority over a lien created by a deed of trust and

recorded before the structure is completed. *Cushwa v. Improvement, Loan & Building Ass'n.,* 45 W.Va. 490, 32 S.E. 259; *Thorn v. Barringer,* 73 W.Va. 618, 81 S.E. 846.

There is no question that under the mechanics' liens statutes in this state which provide that the liens of laborers and materialmen are preferred over all other liens attaching subsequently to the time when the labor or material began to be furnished and that a lien for labor done or material furnished by a contractor dates from the time the contractor began work. Code, 38-2-16, Code, 38-2-17; *Cushwa v. Improvement, Loan & Building Ass'n., supra; Thorn v. Barringer, supra.* The same principle should apply to mechanics' liens where there is no general contractor and the owner contracts with the laborers and materialmen to do the work or furnish the materials on the building. All of the mechanics' liens should take priority as of the time the first work was begun or materials were furnished for the building. It was so held in the case of *Gardner v. Leck,* 52 Minn. 522, 54 N.W. 746. There was no general contractor in that case and the mechanics' liens statutes involved were similar to the statutes involved in this case. It was held that where a mortgage lien was obtained subsequent to the commencement of the work or the furnishing of materials on the mortgaged property, whether by one general contractor or by independent contractors, the mortgage lien is subordinate to the liens of all the laborers and materialmen who have contributed to the completion of the structure.

It is therefore held that under the provisions of the mechanics' liens statutes of this state all perfected mechanics' liens and materialmen's liens attach at the time the initial construction of the building is commenced and take priority over all other intervening liens created by deeds of trust, or otherwise, that are not recorded before the construction begins. It appears from the record that construction was begun on April 12, 1969 when Delbert Mathes began certain plumbing work in connection with the construction of the building, and

under the ruling herein, April 12, 1969 would be the date that all perfected liens of mechanics and materialmen took priority over any and all other subsequent liens and are of equal dignity without priority among themselves. The only liens having priority over the mechanics' liens would be the prior liens created by deeds of trust of the Valley National Bank in the amount of $10,000 and the Valley National Bank in the amount of $15,000 which had been reduced to $6,100. All other liens would take subservient priority in the order of perfection subsequent to the statutorily preferred mechanics and materialmen.

The judgment of the Circuit Court of Cabell County is reversed and the case is remanded with directions to enter judgment in accordance with the holding with regard to the priority of liens stated herein.

*Judgment reversed;*
*case remanded*
*with directions.*