CLYDE P. FARLEY, *et al.*

*v.*

ZAPATA COAL CORPORATION, *etc., et al.*

(No. 14413)

Decided July 17, 1981.

*Bradley J. Pyles, Robert Poyourow, Crandall, Pyles, Crandall & Poyourow* for appellants.

*Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Selden S. McNeer, Jr.*, for appellees.

McGRAW, JUSTICE:

This appeal presents three issues which are here for the first time: (1) does a mechanic's lien for the value of work and labor performed include vacation and sick pay; (2) may a lien for liquidated damages, which arises upon a contractor's default in payment of wages, be enforced in a mechanics' lien proceeding against the corporation employing the contractor; and (3) are attorney fees recoverable in a suit to enforce mechanics' liens. The first issue deals solely with the interpretation of our mechanics' lien statutes, specifically W.Va. Code § 38-2-31 (1966). The latter two issues involve the interrelationship of those statutes with the Wage Payment and Collection Act. W.Va. Code § 21-5-1 *et seq.* (1978 Replacement Vol.).

The twenty-two appellants are former employees of M & T Coal Corporation, a corporation which operated a strip

mine in Logan County, West Virginia. M & T operated the mine as a general contractor for Zapata Coal Corporation, the lessee of the coal rights and holder of the strip mining permit issued by the Department of Natural Resources. Nineteen of the appellants were members of the United Mine Workers of America. The terms and conditions of their employment were governed by the 1974 Bituminous Coal Wage Agreement. The remainder of the appellants had individual employment contracts with M & T.

On March 18, 1977, M & T ceased operations and its owner disappeared. At that time, M & T's employees were owed four weeks' wages. In addition, most of them were also owed accrued vacation pay and compensation for unused paid sick days pursuant to the terms of the 1974 Bituminous Coal Wage Agreement. Several of the non-union management employees were also owed vacation pay by virtue of their individual employment contracts.

At the time of its collapse, M & T Coal Corporation had no tangible assets. Its equipment was either leased, or subject to purchase money security interests, and its bank account was empty.

In June 1977, within the statutory period of ninety days after performing their last work, the appellants filed mechanics' liens against both M & T Coal Corporation and Zapata Coal Corporation. They claimed actual wages for the four weeks they were not paid, accrued vacation and sick pay, and liquidated damages under W.Va. Code § 21-5-4 (1978 Replacement Vol.). On August 26, 1977, an action was brought in the Circuit Court of Logan County to enforce the liens, at which time the appellants also requested, pursuant to W.Va. Code § 21-5-12 (1978 Replacement Vol.), an award of attorney fees and costs expended in enforcing their liens.

M & T Coal Corporation did not file an answer or otherwise appear in the action. Since there were no assets of M & T available against which the appellants' liens could be enforced, no further action was taken against M & T in the circuit court. Zapata Coal Corporation did file an answer and the action proceeded solely against it. The

parties stipulated to the amounts due the appellants at the time M & T ceased operations, and to the amount of liquidated damages for which M & T would have been liable pursuant to W.Va. Code § 21-5-4(e), due to its failure to pay the appellants. The case was then presented to the circuit court on the appellants' motion for summary judgment.

Zapata conceded that the appellants were entitled to enforce their liens for the four weeks of regular wages due at the time M & T's operations ceased, and the court ruled that the liens could be enforced against Zapata for those amounts. However, Zapata denied liability for vacation pay, compensation for unused sick leave days and other fringe benefits, liquidated damages, and attorney fees. With respect to these amounts, the court ruled: (1) that the appellants could not enforce their mechanics' liens against Zapata for accrued vacation pay, compensation for unused sick leave days or any other fringe benefits; (2) that the appellants' liens for liquidated damages under W.Va. Code § 21-5-4 could not be enforced against Zapata; and (3) that the appellants were not entitled to an award of attorney fees, pursuant to W.Va. Code § 21-5-12. The appellants contend these three rulings were erroneous.

I

The mechanics' lien statute involved in this appeal provides that every laborer who performs any work for an incorporated company "shall have a lien for the value of such work or labor upon all real estate and personal property of such company." W.Va. Code § 38-2-31. The court below was of the opinion that this language encompassed only the hourly rate of wages and nothing more. We disagree.

The purpose of our mechanics' lien statutes is to protect the workman who, by the fruits of his labor, benefits another. The statutes act as an aid in the prompt collection of all compensation due the worker. They are remedial in nature, and are to be liberally construed in order that they serve the purpose for which they were enacted. *Carolina Lumber Co. v. Cunningham*, 156 W.Va. 272, 192 S.E.2d 722 (1972). We have in the past enforced a mechanic's lien which

included the value of accrued vacation pay, *State ex rel. Davis v. Iman Mining Co.*, 144 W.Va. 46, 106 S.E.2d 97 (1958),[1] and have also recognized the compensatory nature of fringe benefits such as vacation pay in the context of unemployment compensation proceedings. *Eastern Gas & Fuel Associates v. Hatcher*, 144 W.Va. 229, 107 S.E.2d 618 (1959).

We find our holdings in *State ex rel. Davis v. Iman Mining Co., supra,* and *Eastern Gas & Fuel Associates v. Hatcher, supra,* to be consistent with the decisions of numerous other courts which have also held fringe benefits such as vacation pay to constitute compensation for work performed in various factual contexts. *See Hartman v. Freedman*, 197 Colo. 275, 591, P.2d 1318 (1979); *People v. Bishopp*, 56 Cal. App.3d Supp. 8, 128 Cal. Rptr. 923 (1976); *Jones v. District Parking Management*, 268 A.2d 860 (D.C. App. 1970); *Nitzen v. Oregon State Motor Association*, 248 Or. 133, 432 P.2d 512 (1967); *Moore v. State Unemployment Compensation Commission*, 167 A.2d 76 (Del. 1961); *Carter v. Board of Review*, 323 P.2d 362 (Okla. 1958); *Textile Workers Union v. Williamsport Textile Corp.*, 136 F. Supp. 407 (M.D. Pa. 1955); *Ericson v. General Motors Corp.*, 177 Kan. 90, 276 P.2d 376 (1954); *Calvine Cotton Mills, Inc. v. Textile Workers Union*, 238 N.C. 719, 79 S.E.2d 181 (1953); *Textile Workers Union v. Paris Fabric Mills*, 18 N.J. Super. 421, 87 A.2d 458, *aff'd,* 22 N.J. Super. 381, 92 A.2d 40 (1952).

Fringe benefits, including vacation pay, are also deemed wages by regulations promulgated by the West Virginia Commissioner of Labor pursuant to the Wage Payment and Collection Act, W.Va. Code § 21-5-1 *et seq.*,[2] and by federal decisions determining the priority of wage claims under former § 64(a) (2) of the Bankruptcy Act, 11 U.S.C. § 104 [1976]. *See Re Ad Service Engraving Co.*, 338 F.2d 41 (6th Cir. 1964); *Sulmeyer v. Southern California Pipe Trades Trust Fund*, 301 F.2d 768 (9th Cir. 1962); *United States v.*

---

[1] The Court in *State ex rel. Davis v. Iman Mining Co., supra,* apparently took for granted that vacation pay is a part of the value for which a mechanic's lien may be enforced, and hence did not directly address the issue.

[2] *See* W.Va. Wage Payment and Collection Regs. 100-14,-23 (1976).

*Munro-Van Helms Co.*, 243 F.2d 10 (5th Cir. 1957); *Kavanas v. Mead*, 171 F.2d 195 (4th Cir. 1948); *Re Public Ledger*, 161 F.2d 762 (3rd Cir. 1947); *Re Wil-Low Cafeteria*, 111 F.2d 429 (2nd Cir. 1940).[3]

Vacation pay and other similar benefits are not gratuities which employers benevolently bestow upon their employees. Rather they are integral components of a compensation package bargained for and agreed upon by the parties. One expects that both employers and employees strive for a fair exchange in the employment market place. A factor the employee undoubtedly considers when gauging the fairness of an employment offer is the value of benefits the employer offers in addition to take home pay. Conversely, the employer also takes into account the cost of fringe benefits when determining the salary or hourly wage rate it will offer its prospective employees. Obviously if fringe benefits such as vacation and sick pay were absent from the compensation package, wages would be higher.

Consequently, in light of the policy of our mechanics' lien statutes and the considerations discussed above, we construe "value of such work or labor", as contained in W.Va. Code § 38-2-31, to mean *all* compensation contracted to be paid by the employer for the employee's services regardless of the nature of such compensation. It was therefore error for the court below to rule that the appellants could not enforce mechanics' liens for accrued vacation pay, compensation for unused sick leave days or any other fringe benefits.

## II

The appellants' claim for liquidated damages is based upon the West Virginia Wage Payment and Collection Act. W.Va. Code § 21-5-1 *et seq.* Under the provisions of the act, when an employee is laid off for any reason the employer must pay the employee, no later than the next regular

---

[3] The Bankruptcy Reform Act of 1978 resolved this issue by extending priority to "wages, salaries, or commissions, including vacation, severance, and sick leave pay." 11 U.S.C.A. § 507 (a) (3) (1979).

payday, wages earned at the time of the layoff. W.Va. Code § 21-5-4(d). If the employer fails in this duty, he is held liable, in addition to wages due, for liquidated damages equal in amount to thirty days' wages. The statute further provides that "[e]very employee shall have such lien and all other rights and remedies for the protection and enforcement of such salary and wages, as he would have been entitled to had he rendered service therefor in the manner as last employed. . . ." W.Va. Code § 21-5-4(e).

The appellants argue that the reference to "lien" rights in the above quoted language includes the right to enforce a lien against a corporation by employees of a contractor pursuant to W.Va. Code § 38-2-31. The circuit court declined to accept this view. Instead it ruled that the Wage Payment and Collection Act deals exclusively with employee-employer relations, and that since no contract of employment existed between the appellants and Zapata, the appellants could not enforce their lien for liquidated damages against the corporation. We find this conclusion too constrained in light of the plain language of W.Va. Code § 21-5-4(e) and our principles of statutory construction.

The plain language of W.Va. Code § 21-5-4(e) explicitly provides that an employee shall have a lien and all other rights and remedies for the enforcement of his claim for liquidated damages equal to thirty days' pay, as he would have been entitled to had he actually rendered service therefor in the manner as last employed. It is undisputed that if the appellants had actually performed labor for Zapata's contractor, M & T, during the thirty days for which they claim liquidated damages, they could enforce a lien for their unpaid services against Zapata pursuant to W.Va. Code § 38-2-31. The effect of W.Va. Code § 21-5-4(e) is to create by operation of law a fictitious additional thirty days of employment, and to grant the employee the same remedies and procedures for enforcing his lien for compensation for that fictitious thirty days that he would have had for the value of work actually performed.

It is well established in West Virginia that when two statutes relate to the same general subject and the two statutes are not in conflict, they are to be read *in pari*

materia. *Tug Valley Recovery Center, Inc. v. Mingo County Commission,* 164 W.Va. 94, 261 S.E.2d 165 (1979); *State ex rel. Miller v. Locke,* 162 W.Va. 946, 253 S.E.2d 540 (1979); *Snodgrass v. Simmon's Mobile Home Sales, Inc.,* 161 W.Va. 588, 244 S.E.2d 321 (1978). We therefore hold that insofar as W.Va. Code §§ 21-5-4(e) and 38-2-31 both relate to employee liens to secure compensation, they are to be read together. From the language of both statutes it follows that a lien for liquidated damages, which under the terms of W.Va. Code § 21-5-4(e) is to be treated as a lien for unpaid wages for work actually performed, may be enforced in a proceeding brought pursuant to W.Va. Code § 38-2-31, which gives to the employees of a contractor liens for the unpaid value of work performed against the corporation that hired the contractor. Therefore, we hold that W.Va. Code § 38-2-31 is properly used in aid of the enforcement of a lien for liquidated damages granted under W.Va. Code § 21-5-4(e).

The appellee contends that W.Va. Code § 21-5-7 (1978 Replacement Vol.) relieves Zapata of any liability for liquidated damages. This section of the Wage Payment and Collection Act provides:

> Whenever any person shall contract with another for the performance of any work which the prime contracting person has undertaken to perform for another, the prime contractor shall become civilly liable to employees engaged in the performance of work under such contract for the payment of wages, *exclusive of liquidated damages.* . . . (Emphasis added).

> W.Va. Code § 21-5-7.

Even assuming that the appellee is a prime contractor within the meaning of the statute, its reliance on this section is misplaced because the appellants have not sought to subject Zapata to civil liability for unpaid wages in the suit envisioned by W.Va. Code § 21-5-7. Rather, the appellants' course of action has been to seek enforcement of their liens under W.Va. Code § 38-2-31. The suit contemplated by W.Va. Code § 21-5-7 may be brought only after the employees "have exhausted all feasible remedies contained in [article 5]." W.Va. Code § 21-5-7. One of these

remedies is the lien for wages and liquidated damages contained in section 4(e). It is this remedy the appellants are here pursuing through the procedural means of a suit to enforce mechanics' liens. Consequently, we are not here concerned with the exclusionary provisions of W.Va. Code § 21-5-7. The appellants are in the process of enforcing their liens pursuant to W.Va. Code § 21-5-4(e); they are not engaged in the separate civil suit contemplated by W.Va. Code § 21-5-7.

## III

In the proceeding below the appellants requested an award of attorney fees pursuant to W.Va. Code § 21-5-12. The trial court denied this request because it was of the opinion that Chapter 21, article 5 of the Code dealt exclusively with employer-employee relations, and therefore a claim under Chapter 21, article 5 could not be enforced against a third party corporation such as Zapata in a proceeding brought pursuant to W.Va. Code § 28-2-31 to enforce mechanics' liens.

West Virginia Code § 21-5-12 provides:

(a). Any person whose wages have not been paid in accord with this article. . . may bring any legal action necessary to collect a claim under this article.

(b). The court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant.

It is undisputed that the appellants have claims under Chapter 21, article 5 for wages and liquidated damages. The procedural means chosen by the appellants to enforce their claims was to proceed against the corporation who had hired their contractor under W.Va. Code § 38-2-31, the applicable mechanics' lien statute. We have already held that this was a proper course since W.Va. Code § 38-2-31 is properly used in aid of the enforcement of a claim under Chapter 21, article 5. It follows then, that the action brought by the appellants is an action under Chapter 21,

article 5 within the meaning of W.Va. Code § 21-5-12. Consequently, an award of attorney fees would have been proper.

The statute provides that the court "may" assess costs of the action, including reasonable attorney fees against the defendant. We feel that costs, including attorney fees, should be awarded to prevailing plaintiffs as a matter of course in the absence of special circumstances which would render such an award unjust. Both the Wage Payment and Collection Act and our mechanics' lien statutes are designed to protect the laborer and act as an aid in the collection of compensation wrongfully withheld. Working people should not have to resort to lawsuits to collect wages they have earned. When, however, resort to such action is necessary, the Legislature has said that they are entitled to be made whole by the payment of wages, liquidated damages, and costs, including attorney fees. If the laborer were required to pay attorney fees out of an award intended to compensate him for services performed, the policy of these statutes would be frustrated. The issue, therefore, is not whether working people who assert their legal rights under W.Va. Code Chapter 21, article 5 are entitled to attorney fees, but what a reasonable attorney fee would be under the facts and circumstances of the particular case. Consequently, we hold that an employee who succeeds in enforcing a claim under W.Va. Code Chapter 21, article 5 should ordinarily recover costs, including reasonable attorney fees unless special circumstances would render such an award unjust. Because no such circumstances appear on the record before us, on remand the court below should award costs, including reasonable attorney fees, to the appellants.

In determining the reasonableness of the attorney fee award, the court should consider the factors set out in Disciplinary Rule 2-106 of our Code of Professional Responsibility. These factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the employment will preclude other employment by the

lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imported by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Also, in line with our decision in *Orndorff v. West Virginia Department of Health*, 165 W.Va. 1, 267 S.E.2d 430 (1980), any award of attorney fees below may include the costs and expenses incurred in prosecuting this appeal.

For the foregoing reasons, the decision of the Circuit Court of Logan County is reversed, except insofar that it permits the appellants to enforce their liens for regular wages, and remanded for proceedings consistent with this opinion.

*Reversed in part;*
*remanded.*

MILLER, JUSTICE, dissenting:

The majority ignores both the facts and the law in its result-oriented holding that liens may be enforced against Zapata Coal Corporation [Zapata] for liquidated damages and attorney fees because Zapata's general contractor, M & T Corporation [M & T], failed to pay wages to its (M & T's) employees as required under law. I take no issue with that portion of the opinion which concludes that Zapata is liable to M & T's employees under our mechanic lien statute, W. Va. Code, 38-2-31, for the four weeks' wages due as well as all accrued vacation and other fringe benefits contracted for between M & T and its employees. However, I am in deep disagreement with the majority's holding that our wage payment statute, W. Va. Code, 21-5-4(e) (imposing penalties for nonpayment of wages), can be read into the mechanic lien statute, W. Va. Code, 38-2-31 (enforcement of liens by unpaid workmen).

The majority manages this absurd result by holding that both statutes relate to "employee liens to secure compensation," (Slip Opinion, p. 10), and thus should be read *in pari*

*materia.* This holding completely mischaracterizes the fundamental purposes of each of the statutes. W. Va. Code, 38-2-31, permits workmen who are employed either by a general contractor or subcontractor to have a lien for the amount of their accrued wages against the real and personal property of the corporation who has hired their employer.[1] We have historically held that this statute is remedial and, therefore, should be liberally construed. *Charter v. Doddridge County Bank,* 117 W. Va. 742, 188 S.E. 486 (1936); *Shore v. United Auto Supply,* 107 W. Va. 66, 146 S.E. 890 (1929).

On the other hand, W. Va. Code, 21-5-4(e), which provides for liquidated damages where an employer fails to pay wages due his employees, is strictly limited to the employer-employee relationship.[2] Furthermore, W. Va.

---

[1] W. Va. Code, 38-2-31, provides:

"Every workman, laborer or other person who shall do or perform any work or labor, for an incorporated company doing business in this State, by virtue of a contract either directly with such incorporated company or with its general contractor, or with any subcontractor, shall have a lien for the value of such work or labor upon all real estate and personal property of such company; and, to the extent and value of one month's such work or labor, said lien shall have priority over any lien created by deed or otherwise on such real estate or personal property subsequent to the time when such work or labor was performed: Provided, however, that there shall be no priority of lien as against conditional sales of, or reservation of title to, machinery sold to such company; nor shall there be priority of lien as between the parties claiming under the provisions of this section."

[2] W. Va. Code, 21-5-4(e), provides:

"If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default until he is paid in full, without rendering any service therefor: Provided, however, that he shall cease to draw such wages thirty days after such default. Every employee shall have such lien and all other rights and remedies for the protection and enforcement of such salary or wages, as he would have been entitled to had he rendered service therefor in the manner as last employed; except that, for the purpose of such liquidated damages, such failures shall not be deemed to continue

Code, 21-5-4(e), is a penal statute, and we have traditionally held that statutes involving penalties should be strictly construed. *Dials v. Blair,* 144 W. Va. 764, 111 S.E.2d 17 (1959); *Clear Fork Coal Co. v. Anchor Coal Co.,* 105 W. Va. 570, 144 S.E. 409 (1928). The language of this section is too plain and unambiguous in its reference to the employer-employee relationship to enable me to torture it into a situation where a non-employer becomes liable for the penalty of liquidated damages. The majority does just this, relying on the sheerest casuistry in holding that the word "lien" in the last sentence of W. Va. Code, 21-5-4(e), "is to be treated as a lien for unpaid wages for work actually performed [and] may be enforced in a proceeding brought pursuant to W. Va. Code, 38-2-31." (Slip opinion, p. 9) This quoted language is a complete misreading of the sentence, which merely preserves the lien right and remedies that an employee has for the protection of his "salary or wages." It has nothing to do with broadening the right of the penalty of liquidated damages against third parties who are non-employers.

The purpose of W. Va. Code, 21-5-4(e), is to punish an employer who fails to pay wages to his employees. There is some rationality to this punishment since it will encourage employers to pay their employees in a timely fashion. Moreover, the employer is in direct control of the condition that may give rise to the penalty. Such is not the case with a third party such as Zapata, which has no control over the prompt payment by M & T of its employees who are the plaintiffs in this suit. It is simply incredible to me that Zapata, who is not the employer, can be made responsible.[3]

Other courts have strictly limited the application of penalty provisions of wage collection statutes similar to our own. In *Johnson v. Banner Corporation,* 308 So.2d 534 (La. App. 1975), the Louisiana court refused to allow

---

after the date of the filing of a petition in bankruptcy with respect to the employer if he is adjudicated bankrupt upon such petition."

[3] Of course, if it could be shown that Zapata actually controlled M & T, or that M & T was a subsidiary of Zapata, then liability might be found based on the fact that Zapata was the "real" employer. However, no such contention is made here.

penalties for wage nonpayment against Banner Corporation which had contracted with Andrews Construction Corporation for work in a housing subdivision. Andrews was the employer, as was M & T here, and left with employees unpaid. The court strictly construed the word "employer" to apply only to Andrews:

> "The jurisprudence has interpreted these statutes as being penal in nature and therefore they must be strictly construed, [citations omitted]. Because these statutes are strictly construed the definition 'anyone employing laborers . . .' cannot be interpreted to apply to Banner." 308 So.2d at 536.

*See also Fern v. Latour Creek R. Co.*, 29 Idaho 521, 160 P. 941 (1916); *Milner v. Sheely*, 57 Nev. 174, 69 P.2d 771 (1937), *modifying*, 57 Nev. 159, 60 P.2d 604 (1936); *Eldorado-Rand Mining Co. v. Thompson*, 57 Nev. 407, 65 P.2d 878 (1937).

As a final flourish, the majority seizes upon W. Va. Code, 21-5-12(b), of our Wage Payment and Collection Statute, which provides that "[t]he court in *any action brought under this article* may, [if] judgment is awarded to the plaintiff. . . assess. . . reasonable attorney fees against the defendant," (emphasis added), and holds Zapata liable for attorney fees. The majority ignores the fact that proceedings under Chapter 21, Article 5, are confined to the employer-employee relationship and Zapata was not in that relationship with the plaintiffs. Moreover, the majority, in the early portions of its opinion, held that the plaintiffs' case was brough under the mechanic lien statute, W. Va. Code, 38-2-31; now, it concludes "that the action brough by the appellants is an action under Chapter 21, article 5 . . . ." (Slip Opinion, p. 11)

The Legislature may be slightly astounded by the way in which the majority has legislated new meaning into W. Va. Code, 25-5-1, *et seq.* Despite the plain language of this statute confining its ambit to the employer-employee relationship, the majority has now opened it so wide that anyone may be sued if he has any connection with the wage earner's employer. One might expect the Legislature to correct the majority's mistake but I suspect that no matter

644

what the Legislature does, the majority would twist the result back again.