No. 13-0764 - Quicken Loans, Inc. v. Brown

**FILED**

**November 25, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, concurring, in part, and dissenting, in part:

A mere five months after mishandling a substantial punitive damages verdict in *Manor Care v. Douglas*, ___ W.Va. ___, 763 S.E.2d 73 (2014), the majority has chosen to ignore federal jurisprudence by affirming a punitive damage verdict that violates principles of due process. I write separately not only to express my disagreement with the majority's decision to affirm the punitive damage award in the instant case, but to articulate my staunch disagreement with the Court's related decision in *Quicken Loans, Inc. v. Brown,* 230 W.Va. 306, 737 S.E.2d 640 (2012) (hereinafter "*Quicken I*"), to characterize attorney's fees and costs as compensatory damages. Therefore, while I agree with the majority's conclusion that the circuit court exceeded the mandate of *Quicken I* on remand and its commensurate reduction of the damages and application of the off-set, I wholly reject the majority's decision to uphold the original award of punitive damages assessed in this matter.

I.    *Attorney's Fees and Costs as Compensatory Damages under West Virginia Code § 46A-5-104*

As an initial matter, I recognize that the issue of attorney's fees and costs as compensatory damages was not before this Court in the instant appeal because this issue was fully resolved in *Quicken I*–a decision issued before my term of office began. To avoid any

1

confusion regarding my endorsement of the holdings of *Quicken I*, however, I feel compelled to expose the analytical cracks in *Quicken I's* conclusion that attorney's fees and costs are compensatory damages under West Virginia Code § 46A-5-104 (2006).

In *Quicken I*, this Court held that when punitive damages were "available"[1] in a civil action where attorney's fees and costs were awarded under West Virginia Code § 46A-5-104, such fees and costs must be included in the punitive damages ratio. *See* Syl. Pt. 11, *Quicken I*, 230 W.Va. 306, 737 S.E.2d 646. In conceding that attorney's fees and costs were not "specifically articulated" as compensatory under our consumer credit and protection act, the Court was careful to recognize in *Quicken I* that fee-shifting statutes have been considered compensatory "in general." *Id.* at 331-32, 737 S.E.2d at 665-66. The Court then proceeded to "cherry-pick" various language from fee-shifting statutes and a handful of cases to suggest that attorney's fees and costs should be considered compensatory because they serve the general purpose of reimbursement and making plaintiffs whole.

---

[1]The use of the term "available" in the holding in *Quicken I* was designed to obfuscate the fact that punitive damages are not authorized by the statute under which the attorney's fees and costs were awarded. Accordingly, the Court "borrowed" discretionary, statutory damages from one cause of action to justify the punitive damages awarded under a different cause of action. Not surprisingly, rather than analyzing the intellectual dishonesty of this procedure, the majority conveniently declared in a footnote that the petitioner provided no legal authority in support of this observation and therefore it would not be addressed. *Quicken I*, 230 W.Va. 306, 333 n.43, 737 S.E.2d at 667 n.43.

Addressing this issue with the imprecision of a buzz-saw, the Court in *Quicken I* failed to examine the type and purpose of each fee-shifting statute and the nature of the underlying cause of action–factors necessary to a determination of whether fees and costs are compensatory in a given instance. If the Court had carefully examined the fee-shifting statutes upon which it relied, it would have recognized that several of the cited statutes are *mandatory* fee-shifting statutes. *See*, *e.g.*, W.Va. Code § 29B-1-7 (providing for mandatory fee-shifting in successful FOIA actions); *Orndorff v. W.Va. Dept. Of Health*, 165 W.Va. 1, 267 S.E.2d 430 (1980) (authorizing mandatory attorney's fees for successful appeals of adverse Civil Service Commission determinations).[2] In clear and stark contrast, West Virginia Code § 46A-5-104 is *discretionary*. *Id*. (providing that "the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer"). Logic suggests that recovery of such an award would have been structured as mandatory if the Legislature had intended attorney's fees and costs to be deemed compensatory in nature under the consumer credit and protection act.

Had the Court employed its analysis with greater care in *Quicken I*, it would have been forced to acknowledge that even in those cases relied upon as authority for

---

[2]Similarly, in *Farley v. Zapata Coal Corp*., 167 W.Va. 630, 281 S.E.2d 238 (1981), we held that although the statutory fee-shifting language of the West Virginia Wage Payment and Collection Act was permissive, an award of attorney's fees and costs to a successful litigant was essentially mandatory: "We feel that costs, including attorney fees, should be awarded to prevailing plaintiffs as a matter of course. . . ." *Id*. at 639, 281 S.E.2d at 244.

3

viewing fees and costs as permissive, it was the nature of the causes of action at issue that justified characterizing the fees and costs as compensatory. More specifically, in the cases cited by the Court in *Quicken I*, the underlying litigation was instituted to compel defendants to honor existing statutory or contractual obligations, thereby making an award of fees and costs plainly compensatory. *See Farley*, 167 W.Va. 630, 281 S.E.2d 238 (collection of due and owing wages); *Willow Inn, Inc. v. Public Service Mut. Ins. Co.*, 399 F.3d 224 (3d Cir. 2005) (bad faith claim requiring insurer to honor insurance contract). Where a citizen is compelled to institute litigation and incur attorney's fees and costs to force recalcitrant defendants to comply with their legal or contractual obligations, there is no question that the expenditure of attorney's fees and costs have caused "actual harm" akin to special damages.

In failing to judiciously examine the fee-shifting statutes relied upon, the Court in *Quicken I* overlooked the fact that the conduct at issue herein is simply "bad behavior"–the type of behavior that may warrant punishment in the form of attorney's fees and costs and thereby permits such an award to be properly characterized as punitive. The Court in *Quicken I* utterly ignored this Court's jurisprudence with respect to fraud or other "bad behavior" wherein we have stated that the "obvious purpose of awarding attorney fees and costs in a case involving fraud is that intentional conduct such as fraud should be punished and discouraged. . . . [Defendant] has been sufficiently discouraged from future fraudulent conduct by the sizable punitive damages awarded by the jury." *Boyd v. Goffoli*, 216 W.Va. 552, 569, 608 S.E.2d 169, 186 (2004). Our leading case on punitive damages establishes that

4

the "cost of litigation" is a factor in determining whether the punitive assessment is justified; thereby signifying that such "costs" are more closely associated with deterrence than compensation. Syl. Pt. 4, *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1992). Using the rationale employed by the Court in *Quicken I*, a prevailing plaintiff could always claim that his or her attorney's fees and costs were necessary to make them "whole" or provide "restitution" because such fees and costs would not have been incurred but for the offending conduct. Critically, it is the nature of the conduct that gives rise to the attorney's fees and costs which must impel the inquiry as to whether the fees and costs are compensatory.

## II. Excessiveness of Punitive Damages

Even assuming for purposes of this case that attorney's fees and costs should be included in the punitive damage ratio, the majority has still improperly affirmed the punitive damage verdict. Conforming to the errant analysis employed in *Manor Care*, the majority has again chosen to brazenly ignore the United States Supreme Court's jurisprudence regarding punitive damages, virtually begging to be reversed by that body upon certiorari. In this case, however, the majority now appears to be under the astonishingly mistaken belief that federal punitive damage jurisprudence is not applicable to a punitive damages review conducted by this Court.

5

*A.* **Punitive Damage Awards Must Be Reviewed for Due Process Violations**

Laboring under the misapprehension that a due process challenge is not before this Court with respect to the punitive damages verdict, the majority has chosen to disregard the United States Supreme Court's recent directives set forth in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 582 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003). In reaching this conclusion, the majority is flatly wrong.

First, there is no question that the petitioners plainly asserted a due process challenge to the punitive damages award in both *Quicken I* and in the instant appeal. In *Quicken I*, one of the petitioner's most significant assignments of error was that the punitive damages award was "grossly excessive and deprived Quicken Loans of due process." *Without addressing the merits of the punitive damages challenge*, the *Quicken I* Court merely remanded for an order compliant with *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991). In its appeal from the order issued on remand, the petitioner reasserted a substantive due process challenge: in fact, the petitioner made six separate assignments of error directed at the various aspects of the substantive due process deprivation arising from the punitive damages award.

Regardless of how the petitioner framed its punitive damage challenge, this Court's review of such awards is *necessarily* constrained by due process considerations. The entirety of our punitive damages jurisprudence is centered on the objective of eradicating the

6

due process deprivation that excessive punitive damage awards represent. To the extent the majority believes that a *Garnes*-based challenge is an independent, state-based challenge unencumbered by the United States Supreme Court's punitive damages jurisprudence, it is seriously misguided and patently incorrect.

It should not be overlooked that *Garnes* itself involved a due process challenge to an excessive punitive damage award that was remanded to this Court from the United States Supreme Court for reconsideration in light of *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991), which held that the punitive damages award in that case did not violate the Due Process Clause of the Fourteenth Amendment. In *Garnes*, the reversal of the jury's award was expressly "reverse[d] based on *Haslip*." *Garnes*, 186 W.Va. at 659, 413 S.E.2d at 900. Moreover, in creating the "*Garnes* factors," the Court prefaced that "[f]ollowing the dictates of *Haslip*, we here set out a new system for the review of punitive damages awards in West Virginia." *Id.* at 667, 413 S.E.2d at 908. The import of *Garnes*, therefore, is the establishment of factors that ensure adequate due process of law–under both state and federal law.

Thereafter, in *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 474, 419 S.E.2d 870, 887 (1992), this Court sought to elaborate on the *Garnes* requirement that punitive damages bear a "reasonable relationship to compensatory damages." We noted in *TXO* that the *Garnes* factors were created "*to provide both*

7

*procedural and substantive due process* to defendants against whom punitive damages are awarded in accordance with the U.S. Supreme Court's directive in *Haslip*[.]" *Id.* (emphasis added). While rejecting a "mechanical mathematical formula to use in all punitive damages cases," the Court in *TXO* created the 5:1 "outer limit" ratio for comparison of punitive damages to compensatory damages. Syl. Pt. 15, *TXO*. Critically, the damages ratio review is not a procedure independent of the *Garnes* factors, but rather, a *means of evaluating* one of the most critical factors set forth in *Garnes*–the "reasonable relationship" factor. That factor, like the *Garnes* factors, was adopted–to ensure adequate due process–under state and *federal* principles. Syl. Pt. 3, *Garnes*.

Subsequent to *TXO*, this Court further distilled the construct of a review of punitive damages:

> *Every* post-trial analysis as to the amount of the punitive damage award should be conducted by the trial court *exclusively* within the boundaries of Syllabus Points 3 and 4 of *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), and Syllabus Point 15 of *TXO Production Corp. v. Alliance Resources Corp.*, 187 W. Va. 457, 419 S.E.2d 870 (1992).

Syl. Pt. 6, in part, *Alkire v. First Nat'l Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996) (emphasis added). Further, in syllabus point six of *Perrine v. E. I. Du Pont de Nemours and Co.*, 225 W.Va. 482, 694 S.E.2d 815 (2010), this Court held:

> When this Court, or a trial court, reviews an award of punitive damages, the court must first evaluate whether the conduct of the defendant toward the plaintiff entitled the plaintiff to a punitive damage award under *Mayer v. Frobe*, 40 W. Va. 246,

8

22 S.E. 58 (1895), and its progeny. If a punitive damage award was justified, the court must then examine the amount of the award pursuant to the aggravating and mitigating criteria set out in *Garnes v. Fleming Landfill, Inc*. W. Va. 656, 413 S.E.2d 897 (1992), and the compensatory/punitive damage ratio established in *TXO Production Corp. v. Alliance Resources Corp*, 187 W. Va. 457, 419 S.E.2d 870 (1992).

*Perrine* further clarified that even if a punitive damages award met the due process protections of the ratio analysis under *TXO*, it could still be reduced under the *Garnes* mitigating factors. What *Perrine* did not do was to establish a *Garnes/TXO* analysis as a wholly independent manner of reviewing punitive damage awards separate from federal law. Both holdings are steeped in due process; both cases emanate from and are inextricably linked to the United States Supreme Court's directives aimed at ensuring that adequate due process is provided by state courts. Why this Court believes it may ignore the more recent United States Supreme Court cases–namely *Gore* and *State Farm*–under the guise of employing a state as opposed to federal due process review simply defies logic.

It is axiomatic that state-level constitutional protections may not fall short of those established by the federal constitution. In fact, this Court has previously observed that West Virginia's due process protections are *more* protective than those guaranteed by the federal Constitution: "Although our due process clause does not significantly differ in terms of its language from the Fifth and Fourteenth Amendments to the federal constitution, this Court has determined repeatedly that the West Virginia Constitution's due process clause is more protective [] than its federal counterpart." *Women's Health Center v. Panepinto,* 191

9

W.Va. 436, 441-42, 446 S.E.2d 658, 663-64 (1993). As a result, the majority's stubborn refusal to review the punitive damage award in this case against the edicts of *Gore* and *State Farm*–decisions that enhance previously-adopted and clearly-applicable due process protections–can only be viewed as decidedly misguided. Even worse, the majority's decision may forecast yet another West Virginia punitive damage award being accepted for review by the United States Supreme Court.

### B.    *The Punitive Damage Award Violates Due Process*

Had the majority applied the proper analysis, it would have realized that approval of the punitive damage award simply because the multiplier fell below the 5:1 "outer limit" *TXO* ratio was improper under recent rulings addressing what satisfies due process. "[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual and potential damages to the punitive award." *Gore*, 517 U.S. at 582. The United States Supreme Court has admonished that where compensatory damages are substantial, only a 1:1 ratio will pass constitutional muster:

> [T]he *State Farm* Court stated that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps *only equal to compensatory damages*, can reach the outermost limit of the due process guarantee." *Id.* at 425, 123 S.Ct. 1513 (emphasis added). As such, it is clear that the United States Supreme Court has sanctioned, at most, a 1:1 ratio for cases where the compensatory damages are substantial.

*Manor Care*, ___ W.Va. at ___, 763 S.E.2d at 119 (Loughry, J., dissenting).

10

Given that the compensatory damages (as calculated by the majority) total $613,676.61, there is little question that a 1:1 ratio is the maximum award allowed in the instant case. Instead, the majority adds to the "stark unpredictability of punitive awards" by implicitly endorsing the 3.53:1 ratio in the instant case despite the existence of a substantial award of compensatory damages. *Manor Care*, ___W.Va. at ___, 763 S.E.2d at 120 (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499-500 (2008)). While not as large as the compensatory damage award in *Manor Care*, the more than $600,000.00 in "compensatory" damages in this case are nevertheless "substantial." *See Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1207 (10th Cir. 2012), *cert. denied*, 133 S.Ct. 413 (2012) (reducing punitive damages from slightly more than 3:1 punitive-to-actual damages ratio to 1:1 ratio in part because plaintiff's actual damages of $630,307 were substantial); *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 490 (6th Cir. 2007) ("Given the large compensatory damages award of $366,939 . . . a ratio of closer to 1:1 or 2:1 is all that due process can tolerate in this case."); *Bach v. First Union Nat. Bank*, 486 F.3d 150, 156-57 (6th Cir. 2007) (finding that where plaintiff had recovered $400,000 in compensatory damages, a 1:1 ratio of compensatory to punitive damages was "the outer boundary of what the Constitution will permit.")*; Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004) (concluding that "large compensatory award" of $600,000 in racial harassment claim "is a lot of money" and reducing punitive damages from 10:1 to 1:1 ratio); *Burton v. Zwicker and Associates, PSC*, 2013 WL 5652646 (E.D. Ky. 2013) (reducing ratio to 1:1 due to "substantial" $350,000 compensatory damages); *Thomas v. iStar Fin., Inc.*, 508 F. Supp.2d 252, 263 (S.D.N.Y.2007)

11

("[T]he Court believes the [3:1 to 4:1] ratio in this case is excessive because Thomas was awarded a very substantial amount in compensatory damages [$443,500], making a punitive award equal to the compensatory damage award more appropriate."); *see also Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 54 (Ky. 2003) (noting "the relatively small amount of compensatory damages awarded" to determine appropriate ratio).

Moreover, the fact that the Court felt the need to artificially inflate the compensatory damages in *Quicken I* as a means of effectively reducing the ratio of punitive to compensatory damages is further evidence of the majority's misapprehension of the manner in which punitive damages must be reviewed by this Court. A tortured inclusion of attorney's fees and costs under West Virginia Code § 46A-5-104 is entirely unnecessary to ensure adequate compensation and behavior-deterring punishment. This is evident from the following observation of the United States Supreme Court:

> Indeed, *low awards* of compensatory damages may properly support a *higher ratio* than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine.

*Gore*, 517 U.S. at 582 (emphasis added). Rather than creating the artifice that attorney's fees and costs are compensatory damages in this case, the actual compensatory damage award of $17,476.72 should have been used to examine the award in terms of an acceptable multiplier. Instead, the Court in *Quicken I* felt the need to artificially inflate the

12

compensatory damages which in turn enabled it to sanction a single-digit multiplier and simultaneously enhance the ultimate verdict.

What all of the foregoing makes clear is that a majority of this Court fails either to understand or properly apply United States Supreme Court precedent when reviewing awards of punitive damages. Disturbingly reminiscent of the majority's mishandling of the *Manor Care* verdict, the majority again exhibits its decision to turn a blind eye to the United States Supreme Court's admonition that a reviewing court has a duty to "promot[e] systemic consistency" with regard to punitive awards. *Manor Care*, ___ W.Va. at ___, 763 S.E.2d at 121 (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 502 (2008) (Loughry, J., dissenting)). At this juncture, the only "consistency" to be found in this Court's review of punitive damage awards is its contumacious refusal to heed the United States Supreme Court's holdings and its insistence on a result-oriented analysis to uphold plainly-excessive punitive damage awards. For these reasons, I respectfully concur, in part, and dissent, in part.